## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ALLEN A. PETERSEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **2:08-cv-040-WKW** |
| | ) | |
| DARLENE A. DREW, Warden, | ) | |
| FPC Montgomery, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONSE TO PETITION FILED PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3626

Comes now the respondent, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and pursuant to the Court's Order reports

and responds as follows:

**I.    Petition**

The petitioner has filed a pro-se habeas petition pursuant to 28 U.S.C. § 2241,

claiming the Bureau's determination that he is not eligible for Good Time Credit (GCT)

for 12 months on his old sentence.   As the petitioner is proceeding pro-se in this action

his pleadings and motions will be held to less stringent standards than formal pleadings

drafted by lawyers.  Byrd v. Stewart, 811 F.2d 554, 555 (11th Cir.1987); Fernandez v.

U.S. 941 F.2d 1488, 1491 (11th Cir.1991).  The habeas corpus petition is due to be denied.

## II.  Parties

### A)  Petitioner

The pro se petitioner, Allan Peterson, federal register number 03533-094, is currently incarcerated at the Federal Prison Camp in Montgomery, Alabama. (Attachment 1 - Public Information Inmate form) and (Attachment 2 - Judgement and Commitment Order United States v. Alan Peterson, CR-95-00073-003).  Petitioner is serving a 188 month sentence (with 5 years supervised release to follow) for Conspiracy to Possession Cocaine With Intent To Distribute in violation of Title 21 U.S.C. § 846 (Attachment 1, page 3.)  The petitioner has a projected release date of July 30, 2009, via good conduct time release.  Attachment 1, page 4.

### B)  Respondent

Petitioner has named Darlene Drew, Warden FPC Montgomery, as the Respondent in this matter.  The only proper Respondent in federal habeas cases is the custodian of the petitioner.  See 28 U.S.C. 2242; Rumsfeld v. Padilla, ___ U.S. ___, 124 S.Ct. 2711, 2717-18 (2004).  The Warden is the proper Respondent.

## III.  Subject Matter Jurisdiction

Petitioner brings this action pursuant to 28 U.S.C. § 2241.  Section 2241 provides an avenue of relief for inmates who allege violations of federal law which make the place, condition, or duration of confinement illegal through a petition for writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 499 (1973); Abella v. Rubino, 63 F.3d 1063, 1066

(11th Cir. 1995).

However, here 28 U.S.C. § 2241 may not be appropriate because as explained below it appears the petitioner essentially seeks to challenge his criminal conviction which must first be brought under 28 U.S.C. § 2255. The petitioner cannot show that a § 2255 petition is inadequate or ineffective to challenge the legality of his detention.

## IV.    Venue

Venue in a Habeas Corpus action is governed by 28 U.S.C. §2241, which states that a petition for a writ of habeas corpus shall be filed with the district court of the district in which the petitioner is detained. A writ of habeas corpus does not act upon the prisoner who seeks the relief but upon the person who holds him in what is alleged to be unlawful custody. Hajduk v. U.S., 764 F.2d 795 (11th Cir. 1985). Venue is appropriate.

## V.    Service of Process

Service of process for a Habeas Corpus Petition is governed by 28 U.S.C. § 2243, "The Writ or Order To Show Cause shall be directed to the person having custody of the person detained." Records reflect that officials at FPC Montgomery were served via certified mail on February 21, 2008.

## VI.    Complaint

Petitioner alleges that his statutory release date is inaccurate and should be re-calculated as outlined in Program Statement 5100.08, Inmate Security Designation and Custody Classification, Chapter 4, page 6, "months remaining to release", resulting in an

earlier release date of April 1, 2009.  Petition at page 3, 4, and 5.  Petitioner also alleges

that his Pre-Release Preparation Date should be calculated as October 8, 2008.  Petition at

page 6, 7, and 8.

## VII.    Facts

### A)      Sentence Calculation

Petitioner's sentence computation was audited by Jeff Johnson, Correctional

Program Specialist, Designation and Sentence Computation Center.  (See Declaration of

Jeff Johnson).  Included in the audit was a review of Petitioner's PSI.  Petitioner's

statutory release date is calculated, certified and monitored by the Designations and

Sentence Computations Center (DSCC).  The calculation is by the execution of the

sentence imposed in the Judgment in a Criminal Court in accordance with Program

Statement 5880.28, Sentence Computation Manual (CCCA of 1984).  See Declaration of

Jeff Johnson.

A sentence computation was prepared commencing Petitioner's sentence on the

date it was imposed, July 1, 1996.  (Attachment 3 - Sentence Monitoring Computation

Data Form as of 9/16/1996 and Johnson Declaration).  Petitioner received credit for all

time in custody from the date of his initial arrest on February 17, 1995, until his release

on bond on February 22, 1995.  (Attachment 4 - USMS Prisoner Tracking System

Individual Custody and Detention Report and Johnson Declaration).  Petitioner also

received credit from the date of his re-arrest on December 7, 1995, until the day before

his sentencing on June 30, 1996, for a total of 213 days prior custody credit.  Id. Petitioner also received disallowance of 7 days GCT on October 19, 2006, for a disciplinary infraction. (Attachment 5 - Inmate Discipline Data Chronological Disciplinary Record). Petitioner's projected satisfaction date is now July 30, 2009.  Id. (Attachment 1, page 4)

Petitioner mistakenly believes his release date should be determined in accordance with P.S. 5100.08, Inmate Security Designation and Custody Classification, and outlined in Chapter 4, page 6. (Attachment 6)  This formula is merely an approximation, or an "estimate" used in scoring a prisoner's custody and classification level, and is not intended to calculate an inmate's lawful release date.  The BOP does not use P.S. 5100.08, to calculate a an inmate's sentence.  (Johnson Declaration).

Petitioner's request that his release date be calculated based on his "months to release date" should be denied.  Id.  The appropriate policy used for guidance in calculating a prisoner's release date is P.S. 5880.28, Sentence Computation Manual (CCCA of 1984) (Attachment 7 and Johnson Declaration).

**B)      *Release Date To Residential Referral Center (RRC)***

Petitioner also alleges that his Pre-Release Preparation Date should be calculated as October 8, 2008.  Petition at page 6, 7, and 8.  He asserts that since his release date should be April 9, 2009, his pre-release date should be October 1, 2008.  As a basis for his early release to an RRC the petitioner claims his lengthy sentence of  15 years justifies

his need to be in an RRC for one year.  This argument is without merit.

On April 9, 2008, Congress passed the Second Chance Act, Pub. L.No. 110-199. (Attachment 8).  The Act requires that inmates be individually considered for pre-release RRC placements using the following five-factor criteria from 18 U.S.C. § 3621(b):

(1)    The resources of the facility contemplated;

(2)    The nature and circumstances of the offense;

(3)    The history and characteristics of the prisoner;

(4)    Any statement by the court that imposed the sentence:

    (a)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (b)    recommending a type of penal or correctional facility as appropriate; and

(5)    Any pertinent policy statement issued by the U.S. Sentencing Commission.

The Act also requires staff to ensure that each pre-release RRC placement decision is "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  See 18 U.S.C.  3624(c)(6)(C) (amended).

Additionally, assessing inmates under the above criteria necessarily includes continuing to consider the more specific, and familiar, correctional management criteria found in Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (Attachment 10) including but not limited to, the inmate's needs

for services, public safely, and the necessity of the Bureau to manage its inmate population responsibly.

As a result of the new policy, unit team staff reassessed the inmate's release preparation date in accordance with the five criteria reflected above. The review was conducted by Michael Rowe, Case Manager, FPC Montgomery. As set forth in Mr. Rowe's declaration, RRCs provide suitable residence, structured programs, job placement, and counseling, while the inmates' activities are closely monitored. All RRCs offer drug testing and counseling for alcohol and drug-related problems. The primary purpose of RRC placement is to assist inmates in reintegrating into society following incarceration. All referrals are made with this in mind. A number of factors must be weighed to determine the length of RRC placement for inmates, including their individual needs and existing community resources. Placement of inmates may also be delayed due to the lack of bed space in the RRC.

After weighing the factors outlined in 18 U.S.C. § 3621(b), it was determined that Petitioner should be recommended for a RRC placement of six months. As part of the review, Mr. Rowe reviewed Petitioner's PSI, J&C, work institution history, education history prior and during incarceration, discipline history, and history of outside contacts. (Rowe Declaration).

**C)**     ***Consideration of Factors By Mr. Rowe***

<u>(1) The resources of the facility contemplated</u>

At this time, there is not a halfway house in the Virgin Islands. Thus, when Peterson release, he will be placed directly on home confinement. Therefore, the final approval will be made by the U.S. Probation Department.

<u>(2) The nature and circumstances of the offense</u>

The records reflect Petitioner was committed to BOP custody on September 11, 2006, to serve a 21 month sentence for Conspiracy to Devise a Scheme or Artifice to Defraud by Mail Fraud, Mail Fraud, and Wire Fraud. The circumstances of the offense involve Petitioner planning and conspiring with others to transport cocaine from the Virgin Islands to Atlanta, Georgia. He has a good conduct time release date of March 19, 2008. Petitioner is non-violent and nothing in his history or the nature and circumstances of his offense indicate he would pose a safety issue in the community.

<u>(3) The history and characteristics of the prisoner</u>

Petitioner's crime is non-violent and nothing in his history or the nature and circumstances of his offense indicate he would pose a safety issue in the community. His overall institution adjustment has been good with his last incident report being in 2006. Petitioner has a high school diploma and has some college.

Prior to his conviction for the instant offense in 1995, Petitioner was employed with the Virgin Islands Fire Department in St. Thomas from 1989 to 1995. Prior to this position, Petitioner has always maintained steady employment. He also has some training in automotive repair.

Additionally, while incarcerated, Petitioner has received 60 credit hours in graphic arts, 371 hours in computer classes, and 100 hours in the career learning program. He is currently employed in the Education Department doing clerical work. Thus, it appears Petitioner is articulate and employable. While he will need some time to find employment, he is employable, and will not need more than 6 months.

Petitioner has not had any visitors since his incarceration at FPC Montgomery. This is likely caused by the fact that he is from the Virgin Islands. He has made 100 phone calls in the last six months, the majority of them to the Virgin Islands. He has sent and received 309 e-mails. Petitioner has received monetary support in the amount of $997 since August 2007. All of this indicates he has some post incarceration resources.

(4) Any statement by the court that imposed the sentence:

      (a)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (b)    recommending a type of penal or correctional facility as appropriate;

The J&C does not reflect any concerns expressed by the court regarding Petitioner's imprisonment. The court did not recommend any type of penal or correctional facility.

(5) Any pertinent policy statement issued by the U.S. Sentencing Commission.

As of the enactment of the Second Chance Act, the U.S. Sentencing Commission has not issued any policy statements related to the Bureau's pre-release RRC placement

procedures.

Based on the above factors, it was determined that Petitioner would benefit from an RRC placement of six months. On May 8, 2008, Petitioner was advised that he was being recommended for an RRC for six months and if approved, his release date to the RRC would be January 30, 2009. (Attachment 9 - Inmate Activity Record and Rowe Declaration).

## VIII. Administrative Remedies

The records reflect that the petitioner has exhausted his administrative remedies regarding this matter. He has not raised, nor has he exhausted his administrative remedies regarding the recalculation of his RRC release date based on the provisions of the Second Chance Act.

## IX. Legal Argument

### A) Petitioner's Sentence Was Calculated Correctly

Petitioner alleges that his statutory release date is inaccurate and should be re-calculated as outlined in Program Statement 5100.08, Inmate Security Designation and Custody Classification. As indicated above, he is wrong.

As indicated above and in Mr. Johnson's declaration, Petitioner is entitled to receive GCT. Petitioner argues that the BOP should implement the provisions of PS 5100.08 to calculate his GCT. The section Petitioner relies on is titled "Months to Release," and "reflects the estimated number of months the inmate is expected to be

incarcerated," Id.  Chapter 4 page 6, and it is unrelated to calculation of GCT.

However, the purpose of PS 5100.08, is to assist prison officials in classifying inmates for security purposes. The program statement does not apply to the calculation of good conduct time. See, La Gatta v. Berkebile, Slip Copy WL 682385 at *2 (N.D. Tex. Mar. 6, 2008).  See also, Perez v. Lindsay, 2006 WL 2882966 at *2-3 (M.D.Pa. Oct.6, 2006) (holding that PS 5100.08 and its predecessor, PS 5100.07, are unrelated to the calculation of good conduct time).

**B)**    ***Petitioner Does Not Have An Equal Protection Claim***

To the extent the petitioner claims his equal protection rights are being violated, that argument is due to be rejected.  The Complaint does not allege that the petitioner falls into a protected class or that the BOP acted (or failed to act) towards him as a member of a protected class.  The Equal Protection Clause requires similarly situated persons to be treated in a substantially equivalent manner.  See, F.S. Royster Guano Co. v. Virginia, 253 U.S. 412 (1920)("all persons similarly circumstanced shall be treated alike.").  The Fifth Amendment imposes the same equal protection requirements on the federal government as the Fourteenth Amendment's Equal Protection Clause imposes on the states).  City of Cliburn v. Cliburn Living Center, 473 U.S. 432 (1985); United States v. Perez-Hernandez, 672 F.2d 1380, 1385 (11th Cir.1982).  In order to analyze an equal protection claim, a court must determine whether the challenged classification is one

which involves a suspect class or the exercise of a fundamental right.  See, Plvler v. Doe, 457 U.S. 202, 216-17 (1982).

Unless the petitioner is a member of a suspect class, the government action in question must generally bear a rational relationship to a legitimate government purpose. Prisoners are not a suspect class for equal protection purposes.  Jackson v. State Board of Pardons and Paroles, 331 F.3d 790 (11th Cir. 2003).  The petitioner does not fall into a protected class and incarceration is not an immutable characteristic nor is it an invidious basis for discrimination.  See, Thornton v. Hunt, 852 F.2d 526 (11th Cir. 1988); Moss v. Clark, 886 F.2d 686 (4th Cir. 1989); Brandon v. District of Columbia Board of Parole, 823 F.2d 644 (D.C. Cir. 1987).  Moreover, courts have demonstrated their reluctance to hold that any two prisoners are ever similarly situation.  In Rowe v. Cuvler, 534 F. Supp. 297, at 301 (E.D. Pa. 1982), affirmed, 696 F. 2d 985 (3rd Cir. 1982), the court stated:

> ...it is difficult to believe that any two prisoners could ever
>
> be considered "similarly situated" for purposes of judicial
>
> review on equal protection grounds of broadly discretionary
>
> decisions because such decisions may legitimately be informed by
>
> a broad variety of an individual's characteristics.

Only when a governmental unit adopts a rule that has a special impact on less than all persons subject to its jurisdiction does the question whether this principle [equal protection of the laws] is violated arise." Johnson v. Smith, 696 F.2d 1334, 1336 (11[th]

Cir. 1983), quoting, <u>New York City Transit Authority v. Beazer</u>, 440 U.S. 568, 587-88

(1979).

Respectfully submitted this 16th day of May, 2008.

LEURA G. CANARY
United States Attorney

By:    s/R. Randolph Neeley
Assistant United States Attorney
Bar Number:  #9083-E56R
Attorney for Defendant
United States Attorney's Office
Post Office Box 197
Montgomery, AL  36101-0197
Telephone: (334) 223-7280
Facsimile:  (334) 223-7418
E-mail:  rand.neeley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed, by

United States Postal Service, a copy of same to the following non-CM/ECF participant(s):

> Allen A. Petersen
> Reg. No. 03533-094
> FPC Montgomery
> Maxwell AFB
> Montgomery, AL 36112

> s/ R. Randolph Neeley
> Assistant United States Attorney

# Attachment 1

REGNO..: 03533-094 NAME: PETERSEN, ALLAN A

```
                    RESP OF: MON / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 334-293-2100    FAX: 334-293-2326
                                             RACE/SEX...: BLACK / MALE
                                             AGE: 44
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 07-30-2009                      PAR HEAR DT:
```

---------------------------- ADMIT/RELEASE HISTORY ----------------------------

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| MON | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-31-2007 1205 | CURRENT |
| 3-V | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-31-2007 1305 | 05-31-2007 1305 |
| 3-V | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-30-2007 0800 | 05-31-2007 1305 |
| MRG | FURL TR NC | FURL W/UNESCORT TRF NOT TO CCC | 05-30-2007 0800 | 05-30-2007 0800 |
| MRG | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-02-2006 1637 | 05-30-2007 0800 |
| S39 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 02-02-2006 1637 | 02-02-2006 1637 |
| S39 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 02-02-2006 0700 | 02-02-2006 1637 |
| SEY | TRANSFER | TRANSFER | 02-02-2006 0700 | 02-02-2006 0700 |
| SEY | A-DES | DESIGNATED, AT ASSIGNED FACIL | 04-28-2004 1130 | 02-02-2006 0700 |
| B09 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-28-2004 1130 | 04-28-2004 1130 |
| B09 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-28-2004 0423 | 04-28-2004 1130 |
| PEM | HLD REMOVE | HOLDOVER REMOVED | 04-28-2004 0423 | 04-28-2004 0423 |
| PEM | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 04-27-2004 1629 | 04-28-2004 0423 |
| 7-O | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-27-2004 1629 | 04-27-2004 1629 |
| 7-O | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-27-2004 1611 | 04-27-2004 1629 |
| PEM | HLD REMOVE | HOLDOVER REMOVED | 04-27-2004 1611 | 04-27-2004 1611 |
| PEM | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 04-27-2004 1607 | 04-27-2004 1611 |
| B09 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-27-2004 1607 | 04-27-2004 1607 |
| B09 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-27-2004 0537 | 04-27-2004 1607 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 04-27-2004 0537 | 04-27-2004 0537 |
| ATL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 04-23-2004 1530 | 04-27-2004 0537 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-23-2004 1530 | 04-23-2004 1530 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-23-2004 0913 | 04-23-2004 1530 |
| MIM | HLD REMOVE | HOLDOVER REMOVED | 04-23-2004 0913 | 04-23-2004 0913 |
| MIM | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 04-22-2004 2026 | 04-23-2004 0913 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-22-2004 2026 | 04-22-2004 2026 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-22-2004 1452 | 04-22-2004 2026 |
| GUA | HLD REMOVE | HOLDOVER REMOVED | 04-22-2004 1452 | 04-22-2004 1452 |
| GUA | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 10-20-2003 1734 | 04-22-2004 1452 |
| 0-D | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-20-2003 1734 | 10-20-2003 1734 |
| 0-D | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-08-2003 0929 | 10-20-2003 1734 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 10-08-2003 0929 | 10-08-2003 0929 |
| ATL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 10-08-2003 0926 | 10-08-2003 0929 |
| ATL | COURT | COURT APPEARANCE W/SCHED RETRN | 10-07-2003 0928 | 10-08-2003 0926 |
| ATL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 10-06-2003 2016 | 10-07-2003 0928 |
| B09 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-06-2003 2016 | 10-06-2003 2016 |

G0002       MORE PAGES TO FOLLOW . . .

```
SERBG                         PUBLIC INFORMATION                    03-04-2008
PAGE 002              *           INMATE DATA           *           13:06:57
                              AS OF 03-04-2008

REGNO..: 03533-094 NAME: PETERSEN, ALLAN A

                    RESP OF: MON / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 334-293-2100    FAX: 334-293-2326
B09    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-06-2003 0350 10-06-2003 2016
PEM    HLD REMOVE  HOLDOVER REMOVED               10-06-2003 0350 10-06-2003 0350
PEM    A-HLD       HOLDOVER, TEMPORARILY HOUSED   10-01-2003 1530 10-06-2003 0350
B09    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-01-2003 1530 10-01-2003 1530
B09    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-01-2003 1115 10-01-2003 1530
SEY    FED WRIT    RELEASE ON FEDERAL WRIT        10-01-2003 1115 04-28-2004 1130
SEY    A-DES       DESIGNATED, AT ASSIGNED FACIL  05-28-2002 1230 10-01-2003 1115
B09    RELEASE     RELEASED FROM IN-TRANSIT FACL  05-28-2002 1230 05-28-2002 1230
B09    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-28-2002 0513 05-28-2002 1230
PEM    HLD REMOVE  HOLDOVER REMOVED               05-28-2002 0513 05-28-2002 0513
PEM    A-BOP HLD   HOLDOVER FOR INST TO INST TRF  05-20-2002 1858 05-28-2002 0513
B02    RELEASE     RELEASED FROM IN-TRANSIT FACL  05-20-2002 1858 05-20-2002 1858
B02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-20-2002 0621 05-20-2002 1858
ATL    HLD REMOVE  HOLDOVER REMOVED               05-20-2002 0621 05-20-2002 0621
ATL    A-BOP HLD   HOLDOVER FOR INST TO INST TRF  05-13-2002 1952 05-20-2002 0621
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL  05-13-2002 1952 05-13-2002 1952
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-13-2002 1020 05-13-2002 1952
OKL    HLD REMOVE  HOLDOVER REMOVED               05-13-2002 0920 05-13-2002 0920
OKL    A-BOP HLD   HOLDOVER FOR INST TO INST TRF  04-29-2002 1845 05-13-2002 0920
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL  04-29-2002 1945 04-29-2002 1945
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-29-2002 1148 04-29-2002 1945
PHL    HLD REMOVE  HOLDOVER REMOVED               04-29-2002 1148 04-29-2002 1148
PHL    A-REL CHNG  ADMISSION FOR RELEASE CHANGE   04-29-2002 1146 04-29-2002 1148
B15    RELEASE     RELEASED FROM IN-TRANSIT FACL  04-29-2002 1146 04-29-2002 1146
B15    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-29-2002 1052 04-29-2002 1146
PHL    HLD REMOVE  HOLDOVER REMOVED               04-29-2002 1052 04-29-2002 1052
PHL    A-BOP HLD   HOLDOVER FOR INST TO INST TRF  04-23-2002 1508 04-29-2002 1052
B15    RELEASE     RELEASED FROM IN-TRANSIT FACL  04-23-2002 1508 04-23-2002 1508
B15    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-23-2002 1322 04-23-2002 1508
FTD    TRANSFER    TRANSFER                       04-23-2002 1322 04-23-2002 1322
FTD    A-DES       DESIGNATED, AT ASSIGNED FACIL  04-06-2001 1215 04-23-2002 1322
S13    RELEASE     RELEASED FROM IN-TRANSIT FACL  04-06-2001 1215 04-06-2001 1215
S13    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-06-2001 0558 04-06-2001 1215
LEW    HLD REMOVE  HOLDOVER REMOVED               04-06-2001 0558 04-06-2001 0558
LEW    A-BOP HLD   HOLDOVER FOR INST TO INST TRF  04-04-2001 1333 04-06-2001 0558
S15    RELEASE     RELEASED FROM IN-TRANSIT FACL  04-04-2001 1333 04-04-2001 1333
S15    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-04-2001 0545 04-04-2001 1333
RBK    TRANSFER    TRANSFER                       04-04-2001 0545 04-04-2001 0545




G0002        MORE PAGES TO FOLLOW . . .
```

```
    SERBG                      PUBLIC INFORMATION              03-04-2008
  PAGE 003            *          INMATE DATA          *        13:06:57
                            AS OF 03-04-2008


  REGNO..: 03533-094 NAME: PETERSEN, ALLAN A

                      RESP OF: MON / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 334-293-2100    FAX: 334-293-2326
  PRE-RELEASE PREPARATION DATE: 01-30-2009

  THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
  THE INMATE IS PROJECTED FOR RELEASE:  07-30-2009 VIA GCT REL

  ---------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

  COURT OF JURISDICTION...........: VIRGIN ISLANDS
  DOCKET NUMBER...................: 3:95CR00073-003
  JUDGE...........................: MOORE
  DATE SENTENCED/PROBATION IMPOSED: 07-01-1996
  DATE COMMITTED..................: 09-11-1996
  HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
  PROBATION IMPOSED...............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
  NON-COMMITTED.: $50.00         $00.00          $00.00       $00.00

  RESTITUTION...: PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

  ------------------------CURRENT OBLIGATION NO: 010 --------------------------
  OFFENSE CODE....: 391
  OFF/CHG: 21:846; CONSP. TO POSS. COCAINE WITD.

   SENTENCE PROCEDURE.............: 3559 VCCLEA NON-VIOLENT SENTENCE
   SENTENCE IMPOSED/TIME TO SERVE.:  188 MONTHS
   TERM OF SUPERVISION............:    5 YEARS
   DATE OF OFFENSE................: 02-10-1995




  G0002       MORE PAGES TO FOLLOW . . .
```

REGNO..: 03533-094 NAME: PETERSEN, ALLAN A

                    RESP OF: MON / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 334-293-2100     FAX: 334-293-2326
------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 10-20-2006 AT MRG AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 07-01-1996
TOTAL TERM IN EFFECT............:     188 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:      15 YEARS        8 MONTHS
EARLIEST DATE OF OFFENSE........: 02-10-1995

JAIL CREDIT.....................:     FROM DATE      THRU DATE
                                      02-17-1995     02-22-1995
                                      12-07-1995     06-30-1996

TOTAL PRIOR CREDIT TIME.........: 213
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 731
TOTAL GCT EARNED................: 641
STATUTORY RELEASE DATE PROJECTED: 07-30-2009
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 07-31-2011


PROJECTED SATISFACTION DATE.....: 07-30-2009
PROJECTED SATISFACTION METHOD...: GCT REL


S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

Attachment 2

AO 245B (Rev. 3/95) Sheet 1 Judgment in a Criminal Case

# United States District Court

## District of the Virgin Islands

UNITED STATES OF AMERICA

v.

**ALLAN A. PETERSEN**

**JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed On or After November 1, 1987)

Case Number:  3:95CR00073-003

Michael A. Joseph, Esquire

Defendant's Attorney

### THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)  **I**
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C.  846 | Conspiracy To Possess Cocaine With Intent To Distribute | 02/10/1995 | I |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) _____

☒  Count(s)  **II and III** _____ are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: **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** | 07/01/1996 |
| Defendant's Date of Birth: **06/24/1963** | Date of Imposition of Judgment |
| Defendant's USM No.: **03533-094** | |
| Defendant's Residence Address: | |
| **Estate Nadir 33-26** | Signature of Judicial Officer |
| | **THOMAS K. MOORE** |
| **St. Thomas,**    VI    **00802** | **Chief Judge** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| **Estate Nadir 33-26** | July 1, 1996 |
| | Date |
| **St. Thomas,**    VI    **00802** | |

AO 245B (Rev. 3/95) Sheet 2 - Imprisonment

DEFENDANT:     ALLAN A. PETERSEN

CASE NUMBER:     3:95CR00073-003

Judgment-Page __2__ of __6__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of     **188   month(s)**     .

The defendant shall be given credit for time served in pre-trial and post conviction detention, from February 17, 1995 to February 22, 1995 and since December 7, 1995. The Court finds that the defendant does not have the financial ability to pay the cost of incarceration, therefore, such is waived.

☒  The court makes the following recommendations to the Bureau of Prisons:

That the defendant be allowed to participate in the Inmate Financial Responsibility Program and that he be incarcerated in the New York City Metropolitan area, if possible, Fort Dix, New Jersey.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____ a.m./p.m.  on _____

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

Defendant delivered on _____9-11-96_____ to ____F.C.I.____

at __Ray Brook, NY__ , with a certified copy of this judgment.

_W.S. Keller, Warden_
UNITED STATES MARSHAL

By _L. Carpenter, AISM_
Deputy U.S. Marshal

AO 245B (Rev. 3/95) Sheet 3 - Supervised Release

DEFENDANT:    ALLAN A. PETERSEN

CASE NUMBER:    3:95CR00073-003

Judgment—Page __3__ of __6__

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of     __5__    year(s)

The Court finds that the defendant does not have the financial ability to pay the cost of supervised release, therefore, such is waived.

    The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

    The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ · The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

    If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

    The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 3/95) Sheet 5, Part A - Criminal Monetary Penalties

DEFENDANT:        ALLAN A. PETERSEN
CASE NUMBER:    3:95CR00073-003

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| Totals: | $        50.00 | $        0.00 | $        0.00 |

☐  If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .    $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  The interest requirement is waived.

☐  The interest requirement is modified as follows:

## RESTITUTION

☐  The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☐  The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
|  |  |  |  |
| Totals: | $ _____ | $ _____ |  |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

AO 245B (Rev. 3/95) Sheet 5, Part B - Criminal Monetary Penalties

| | Judgment-Page _5_ of _6_ |

**DEFENDANT:**   ALLAN A. PETERSEN
**CASE NUMBER:**   3:95CR00073-003

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  In full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____ ; or

D  ☐  In installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ (e.g. equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

Attachment 3

```
 RBKK2   540#23 *              SENTENCE MONITORING            *    09-16-1996
 PAGE 001        *             COMPUTATION DATA               *    15:25:35
                                AS OF 09-16-1996
```

REGNO...: 03533-094 NAME: PETERSEN, ALLAN A

```
FBI NO.............: 754112DB3          DATE OF BIRTH: 06-24-1963
ARS1...............: RBK/A-DES
UNIT...............: DEL               QUARTERS.......: DEL
DET/NOTIF RMK......: NO                NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  07-23-2009 VIA GCT REL
                                         30
------------------------CURRENT JUDGMENT/WARRANT NO: 010------------------------

```
COURT OF JURISDICTION.............: VIRGIN ISLANDS
DOCKET NUMBER.....................: 3:95CR00073-003
JUDGE.............................: MOORE
DATE SENTENCED/PROBATION IMPOSED..: 07-01-1996
DATE COMMITTED....................: 09-11-1996
HOW COMMITTED.....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED.................: NO
```

```
                FELONY ASSESS   MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.:  $50.00          $0.00           $0.00        $0.00
```

RESTITUTION...: PROPERTY:  NO   SERVICES:  NO        AMOUNT: $0.00

------------------------CURRENT OBLIGATION NO: 010------------------------
OFFENSE CODE....: 391
OFF/CHG: 21:846, CONSP. TO POSS. COCAINE WITD.

```
 SENTENCE PROCEDURE...............: 3559 SRA SENTENCE
                                         YNV
 SENTENCE IMPOSED/TIME TO SERVE.: 188 MONTHS
 TERM OF SUPERVISION..............: 5 YEARS
 DATE OF OFFENSE..................: 02-10-1995
```

G0002     MORE PAGES TO FOLLOW . . .

```
   RBKK2  540*23 *              SENTENCE MONITORING           *      09-16-1996
   PAGE 002 OF 002 *              COMPUTATION DATA            *      15:25:39
                                AS OF 09-16-1996
```

RECNO..: 03533-094 NAME: PETERSEN, ALLAN A

------------------------------CURRENT COMPUTATION NO: 010 ------------------------------

COMPUTATION 010 WAS LAST UPDATED ON 09-16-1996 AT RBK AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..............: 07-01-1996
TOTAL TERM IN EFFECT................:    188 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     15 YEARS        0 MONTHS

JAIL CREDIT.........................:     FROM DATE      THRU DATE
                                        02-17-1995     02-22-1995
                                        12-07-1995     06-30-1996

TOTAL PRIOR CREDIT TIME.............: 213
TOTAL INOPERATIVE TIME..............: 0
TOTAL GCT POSSIBLE..................: 737
TOTAL GCT AWARDED...................: 0
STATUTORY RELEASE DATE (CURRENT): 07-31-2011
SIX MONTH /10% DATE.................: 01-24-2009
EXPIRATION FULL TERM DATE...........: 07-31-2011

PROJECTED SATISFACTION DATE.....: 07-24-2009
PROJECTED SATISFACTION METHOD...: GCT REL
```

COMPUTED BY: _Barry O. Leary_ 9-16-96

AUDITED BY: _Larry Lyuent_ 9-17-96

TFR AUDIT BY: _Lluquent_ 4-2-01

REL AUDIT BY: _____
(Signature & Date Required P.S. 5800.07)

G0080      TRANSACTION SUCCESSFULLY COMPLETED

BP-S 613.055 **DETERMINATION** : CDFRM
JUN 96    VIOLENT / NON-VIOLENT STATUS, VCCLEA
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

INSTITUTION: _____ 2 BK _____ UNIT: _____

INMATE NAME: _____ PETERSON, Allan _____ REG. NO: 63533-677

TO: INMATE SYSTEMS MANAGEMENT

| DOCKET NUMBER | COUNT NUMBER | OFFENSE | VIOLENT (V) / NON-VIOLENT (NV) | |
|---|---|---|---|---|
| 3:95CR00073-003 | 1 | Conspiracy to possess WITD Cocaine | ☐ V | ☒ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |
| | | | ☐ V | ☐ NV |

_____ 7/24/97
Case Manager                 Date

Attachment 4

DATE: 07/16/1996 TIME: 12:23 PAGE:    1

UNITED STATES MARSHALS SERVICE
PRISONER TRACKING SYSTEM
D/VIRGIN ISLANDS
DISTRICT: 94    OFFICE: THO

INDIVIDUAL CUSTODY AND DETENTION REPORT USM (129)

NAME:   PETERSEN, ALLAN ANDREW
USMS NUMBER: 03533094

I. IDENTIFICATION DATA:

USMS NBR: 03533094   NAME: PETERSEN, ALLAN ANDREW

ADDRESS:                          ST. THOMAS, VI 00803                          PHONE: 809-777-4025

DOB: 06/24/1963  AGE: 33  POB: ST. THOMAS, VI          SEX: M  RACE: B  HAIR: BLK  EYE: BRO  HEIGHT: 507  WEIGHT: 190

FBI NBR:              ALIEN NBR:

*****SPECIAL HANDLING CODE:        SPECIAL HANDLING REMARKS:
SEPARATEES                         FORMER BUREAU OF CORRECTION OFFICER.

ACTIVE DETAINERS:        DETAINER DATE    AGENCY
NONE

PRISONERS ALIASES:        ALIAS REMARKS:
NONE

GENERAL REMARKS:

II. CASE INFORMATION:

| CTR | STATUS | COURT CASE NUMBER | FEDERAL COURT CITY |
|-----|--------|-------------------|--------------------|
| 1 | WT-DESIG | 3533094-1 | ST. THOMAS |

| CTR | JUDGE NAME | US ATTORNEY NAME | DEFENSE ATTORNEY NAME |
|-----|-----------|-----------------|----------------------|
| 1 | MOORE, THOMAS | JONES, NELSON | FRANCIS JR., LEONARD |

| CTR | ARREST DATE | ARRESTING AGENCY | LOCATION OF ARREST | WARRANT NUMBER |
|-----|-------------|------------------|--------------------|----------------|
| 1 | 02/17/1995 | U.S. CUSTOMS | EST. ST. PETER MTN. | |

| CTR | OFFENSE | OFFENSE REMARK | DISPOSITION |
|-----|---------|----------------|-------------|
| 1 | COCAINE | | CONVICTED |
| 1 | COCAINE-SMUGGLE | | NOT YET DISPOSED |

| CTR | SENTENCE DATE | SENTENCE | APPEAL DATE |
|-----|---------------|----------|-------------|
| 1 | 07/01/1996 | 188 MONTHS/ 5 YRS. SUP. REL./ $50 SPECIAL ASSESSMT | **/**/**** |

III. STATUS HISTORY

| CTR | STATUS | STATUS DATE | CUSTODY DATE | RELEASE DATE | REMARK |
|-----|--------|-------------|--------------|--------------|--------|
| 1 | WT-TRIAL | 02/17/1995 | 02/17/1995 | **/**/**** | |

TE: 07/16/1996 TIME: 12:23 PAGE:    2

UNITED STATES MARSHALS SERVICE
PRISONER TRACKING SYSTEM
D/VIRGIN ISLANDS
DISTRICT: 94    OFFICE: THO

INDIVIDUAL CUSTODY AND DETENTION REPORT USM (129)

NAME:    PETERSEN, ALLAN ANDREW
USMS NUMBER: 03533094

| 1 | RL-BOND | 02/22/1995 | **/**/**** | 02/22/1995 | RELEASED ON $100,000.00 SECURED BOND |
| 1 | WT-SENT | 12/07/1995 | **/**/**** | **/**/**** | FOUND GUILTY/REMANDED TO CUSTODY |
| 1 | WT-DESIG | 07/01/1996 | **/**/**** | **/**/**** | SENTENCED |

IV. CHRONOLOGICAL PRISONER HISTORY

| INST CODE | INSTITUTION NAME | ADMIT DATE | RELEASE DATE | DAYS BOARDED | ACTION OR DISPOSITION |
|---|---|---|---|---|---|
| CEL | CELLBLOCK | 02/17/1995 | 02/17/1995 | 0 | |
| GUA | MDC GUAYNABO | 02/17/1995 | 02/22/1995 | 5 | |
| CEL | CELLBLOCK | 02/22/1995 | 02/22/1995 | 0 | DETENTION HEARING |
| BND | ON BOND | 02/22/1995 | 12/07/1995 | 1 | |
| CEL | CELLBLOCK | 12/07/1995 | 12/07/1995 | 0 | USMS CELLBLOCK |
| GUA | MDC GUAYNABO | 12/07/1995 | 07/01/1996 | 207 | HOLDOVER MDC GUAYNABO |
| CEL | CELLBLOCK | 07/01/1996 | 07/01/1996 | 0 | SENTENCED/ CTR-1 |
| GUA | MDC GUAYNABO | 07/01/1996 | **/**/**** | 15 | HOLDOVER MDC GUAYNABO |

TOTAL DAYS BOARDED    228

# Attachment 5

```
  DSC5B          *        INMATE DISCIPLINE DATA         *    03-07-2008
  PAGE 001       *    CHRONOLOGICAL DISCIPLINARY RECORD   *    08:56:43

REGISTER NO: 03533-094 NAME..: PETERSEN, ALLAN A
FUNCTION...: PRT      FORMAT: CHRONO   LIMIT TO    MOS PRIOR TO 03-07-2008

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1507342 - SANCTIONED INCIDENT DATE/TIME: 08-30-2006 0800
DHO HEARING DATE/TIME: 10-19-2006 1500
FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                       MAIL IN CARE OF ANOTHER INMATE.
   410  USING MAIL W/O AUTH - FREQ: 3
         DIS GCT    / 7 DAYS / CS
         COMP:010 LAW:N
         DS         / 15 DAYS / CS / SUSPENDED 180 DAYS
         COMP:   LAW:
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1506830 - SANCTIONED INCIDENT DATE/TIME: 08-29-2006 1217
DHO HEARING DATE/TIME: 10-19-2006 1445
FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                       MAIL IN CARE OF ANOTHER INMATE.
   410  USING MAIL W/O AUTH - FREQ: 2
         DS         / 7 DAYS / CS / SUSPENDED 180 DAYS
         COMP:   LAW:
         LP COMM    / 60 DAYS / CS
         COMP:   LAW:   EFFECTIVE 11-19-2006 TO 01-18-2007
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1506831 - SANCTIONED INCIDENT DATE/TIME: 08-29-2006 0730
DHO HEARING DATE/TIME: 10-19-2006 1430
FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                       MAIL IN CARE OF ANOTHER INMATE.
   410  USING MAIL W/O AUTH - FREQ: 1
         CHG QTRS   / CS
         COMP:   LAW:   HOUSE IN LOWEST STATUS HOUSING AVAILABLE.
         LP COMM    / 30 DAYS / CS
         COMP:   LAW:   EFFECTIVE 10-19-2006 TO 11-18-2006.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1447008 - SANCTIONED INCIDENT DATE/TIME: 03-20-2006 1500
DHO HEARING DATE/TIME: 10-19-2006 1415
FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
APPEAL CASE NUMBER(S): 415681
REPORT REMARKS.......: ADMITTED SENDING LOCAL USE ONLY SHOES FROM FCI SEY TO
                       FCI MRG, HIDDEN INSIDE BOX MARKED LEGAL MATERIAL.
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
         LP COMM    / 30 DAYS / CS
         COMP:   LAW:   SANCTION ALREADY SERVED PRIOR TO REPORT BEING
                        REMANDED FOR REHEARING.



  G0002       MORE PAGES TO FOLLOW . . .
```

```
  DSC5B          *         INMATE DISCIPLINE DATA        *    03-07-2008
PAGE 002 OF 002 *    CHRONOLOGICAL DISCIPLINARY RECORD   *    08:56:43

REGISTER NO: 03533-094 NAME..: PETERSEN, ALLAN A
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO    MOS PRIOR TO 03-07-2008

------------------------------------------------------------------------------
REPORT NUMBER........: 1447008 (REHEARD 10-19-2006 1415)
DHO HEARING DATE/TIME: 04-12-2006 1430
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1012535 - SANCTIONED INCIDENT DATE/TIME: 07-23-2002 1000
UDC HEARING DATE/TIME: 07-24-2002 1515
FACL/UDC/CHAIRPERSON.: SEY/COASTAL/J. EARP
APPEAL CASE NUMBER(S): 274628
REPORT REMARKS.......: INMATE ADMITS THAT THE INCIDENT REPORT IS TRUE.
   303A POSSESSING UNAUTHORIZED MONEY - FREQ: 1
        EXTRA DUTY / 20 HOURS / CS
        COMP:    LAW:    20 HOURS EXTRA DUTY TO BE COMPLETED NLT 8/7/02.
   406  USING PHONE OR MAIL W/O AUTH - FREQ: 1
        LP VISIT   / 30 DAYS / CS
        COMP:    LAW:    30 DAYS LOSS OF VISITING FROM 7/24/02 - 8/23/02
   408  CONDUCTING A BUSINESS W/O AUTH - FREQ: 1
        LP PHONE   / 30 DAYS / CS
        COMP:    LAW:    30 DAYS LOSS OF PHONE FROM 7/24/02 - 8/23/02
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 558698 - SANCTIONED  INCIDENT DATE/TIME: 01-31-1998 1645
UDC HEARING DATE/TIME: 02-03-1998 1420
FACL/UDC/CHAIRPERSON.: RBK/DEL/RADLOFF W
REPORT REMARKS.......: ADMITTED INFRACTION
   317  FAILING TO FOLLOW SAFETY REGS - FREQ: 1
        LOSE PRIV  / 15 DAYS / CS
        COMP:    LAW:    LOSS OF COMMISSARY, EFFECTIVE 2/3/98 TO 2/17/98

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# Attachment 6



U.S. Department of Justice
**Federal Bureau of Prisons**

# Program Statement

**OPI:**     CPD/CPB
**NUMBER:**  P5100.08
**DATE:**    9/12/2006
**SUBJECT:** Inmate Security
             Designation and Custody
             Classification

1. **PURPOSE AND SCOPE.**  This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system.  The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b).  All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2. **PROGRAM OBJECTIVES.**  The expected results of this Program Statement are:

   a.  Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b.  Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3. **SUMMARY OF CHANGES.**  This revision incorporates Executive Staff decisions 03-04-05 and 99-03-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a.  The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score."  (Chapter 4, Page 8 and Chapter 6, Page 5)

same day as sentencing.  Voluntary Surrender Credit may only be applied to the initial term of confinement; it may not be applied to any subsequent Supervised Release, Mandatory Release or parole Violation return to custody.

5a.  **VOLUNTARY SURRENDER DATE.**  If the court has provided for voluntary surrender, enter the date of the voluntary surrender in this block.  If the court provided for voluntary surrender but did not provide a specific date for the surrender, the DSCC will contact the court to establish a mutually agreeable date.

**NOTE:**    In cases where the court allows the inmate to voluntarily surrender but the inmate will not receive (-3) points on this item the date will still be entered on this item.

5b.  **VOLUNTARY SURRENDER LOCATION.**  The DSCC will note whether the inmate is to voluntarily surrender to the USMS or to the designated institution.

6.  **MONTHS TO RELEASE**

| 6. MONTHS TO RELEASE    _____ |
| --- |

This item reflects the estimated number of months the inmate is expected to be incarcerated.  Consecutive federal sentences will be added together for classification purposes.  Federal sentences may have different beginning dates, based on the Judgment Order. There may even be a computation in SENTRY with a beginning date in the future.  Based on the inmate's sentence(s), enter the total number of months remaining, less 15% (for sentences over 12 months), and credit for any jail time served.  This item is not figured into the security point total but impacts the Sentence Length Public Safety Factor.

**Example:**  An adult convicted of Breaking and Entering under the Sentence Reform Act is sentenced to eight years.  The expected length of incarceration is (96 months x 85% = 81.6 months). Round to the nearest whole number to get 82 and subtract any jail time credit (180 days) = 76 months to release.

**NOTE:**    Enter 540 months for death penalty cases, life sentences, and Parolable life sentences for which a parole date has not been established.

Attachment 7



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

|                  |                              |
| ---------------- | ---------------------------- |
| **OPI:**         | CPD                          |
| **NUMBER:**      | 5880.28                      |
| **DATE:**        | CN-06, 7/19/99               |
| **SUBJECT:**     | Sentence Computation         |
|                  | Manual (CCA of 1984)         |

1. **PURPOSE AND SCOPE.** This Program Statement transmits the "Sentence Computation Manual" which establishes the policies and procedures for the computation of sentences imposed for violations of the United States Code under the statutes of the Comprehensive Crime Control Act of 1984 (CCCA).

On October 12, 1984, President Reagan signed the Comprehensive Crime Control Act of 1984 (CCCA) into law. Two major components of this law, the Sentencing Reform Act of 1984 (SRA) and the Insanity Reform Act of 1984, completely restructured the sentencing guidelines and policies of the United States Courts.

After the effective date of the SRA on November 1, 1987, a number of United States Court decisions found all or parts of the SRA unconstitutional. As a result, the SRA was implemented nationally in various ways.

On January 18, 1989, in **Mistretta v. U.S.**, the Supreme Court considered the constitutionality of the sentencing guidelines and ruled that the guidelines were constitutional. This Manual provides instructions for computing sentences imposed under the CCCA both before and after the **Mistretta** decision.

2. **DIRECTIVES AFFECTED**

   a. **Directives Rescinded.** None.

   b. **Directives Referenced.** None.

P.S. 5880.28
February 21, 1992
Page 3 - 19

**EXAMPLE NO. 9 (continued)**

### YEARLY GCT/PARTIAL YEAR GCT/SRD/6 WEEKS DATE CALCULATIONS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Anni-versary Date | Consideration Begins | Vested Date | Maximum To Award | Actual Award | Running Total | Release Date 05-08-90 |
|---|---|---|---|---|---|---|
| 01-10-90 | 01-10-90 | 01-24-90 | 54 | | 54 | 03-15-90 |

```
Tentative SRD (54 GCT)      =  90-03-15  =  18702
Last Anniversary Date       =  90-01-09* = -18637
Partial Year Remaining                  =     65  Days

65 x .148   =   9.62
65 - 9      =   56 x .148  =  8.288 + 56  =  64.288
65 - 8      =   57 x .148  =  8.436 + 57  =  65.436

Tentative SRD 954 GCT)      =  90-03-15  =  18702
Prorated GCT for Partial Year           =      8  Days
SRD                         =  90-03-07  =  18694
6 Weeks Consideration Time              = -   41  Days
6 Weeks Date                =  90-01-25  =  18653
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Anni-versary Date | Consideration Begins | Vested Date | Maximum To Award | Actual Award | Running Total | Release Date 05-08-90 |
|---|---|---|---|---|---|---|
| | 01-25-90 | 03-07-90 | 8 | | 62 | 03-07-90 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### 6 MONTHS/10% DATE CALCULATION

```
SRD                  =  90-03-07  =  18694
DCB                  =  89-01-09* = -18272
Days To Be Served               =    422  Days
10%                             = x   .10
Pre-Release Custody             =   42.2  Days

SRD                  =  90-03-07  =  18694
Pre-Release Custody             = -   42  Days
                                    18652
                                +    1  Day
10% Date (Less Than 6 Mos.) =  90-01-25  =  18653
```

Attachment 8

## § 3621. Imprisonment of a convicted person (as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

(a) Commitment to custody of Bureau of Prisons.--A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. _Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person._

(c) Delivery of order of commitment.--When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

(d) Delivery of prisoner for court appearances.--The United States marshal shall, without charge, bring a prisoner into court or return him to a prison facility on

order of a court of the United States or on written request of an attorney for the Government.

(e) Substance abuse treatment.--

(1) Phase-in.--In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)--

(A) for not less than 50 percent of eligible prisoners by the end of fiscal year 1995, with priority for such treatment accorded based on an eligible prisoner's proximity to release date;

(B) for not less than 75 percent of eligible prisoners by the end of fiscal year 1996, with priority for such treatment accorded based on an eligible prisoner's proximity to release date; and

(C) for all eligible prisoners by the end of fiscal year 1997 and thereafter, with priority for such treatment accorded based on an eligible prisoner's proximity to release date.

(2) Incentive for prisoners' successful completion of treatment program.--

(A) Generally.--Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall

remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such conditions on determining that substance abuse has recurred.

(B) Period of custody.--The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(3) Report.--The Bureau of Prisons shall transmit to the Committees on the Judiciary of the Senate and the House of Representatives on January 1, 1995, and on January 1 of each year thereafter, a report. Such report shall contain--

(A) a detailed quantitative and qualitative description of each substance abuse treatment program, residential or not, operated by the Bureau;

(B) a full explanation of how eligibility for such programs is determined, with complete information on what proportion of prisoners with substance abuse problems are eligible; and

(C) a complete statement of to what extent the Bureau has achieved compliance with the requirements of this title.

(4) Authorization of appropriations.--There are authorized to carry out this

-2-

subsection such sums as may be necessary for each of fiscal years 2007 through 2011.

(5) Definitions.--As used in this subsection--

(A) the term "residential substance abuse treatment" ~~means a course of individual and group activities, lasting between 6 and 12 months, in residential treatment facilities set apart from the general prison population~~

~~(i) directed at the substance abuse problems of the prisoner;~~

~~(ii) intended to develop the prisoner's cognitive, behavioral, social, vocational, and other skills so as to solve the prisoner's substance abuse and related problems; and~~

~~(iii) which may include the use of pharmacoptherapies [FN1], if appropriate, that may extend beyond the treatment period;~~ <u>means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period);</u>

(B) the term "eligible prisoner" means a prisoner who is--

(i) determined by the Bureau of Prisons to have a substance abuse problem; and

(ii) willing to participate in a residential substance abuse treatment program; and

(C) the term "aftercare" means placement, case management and

monitoring of the participant in a community-based substance abuse treatment program when the participant leaves the custody of the Bureau of Prisons.

(6) Coordination of Federal assistance.--The Bureau of Prisons shall consult with the Department of Health and Human Services concerning substance abuse treatment and related services and the incorporation of applicable components of existing comprehensive approaches including relapse prevention and aftercare services.

(f) Sex offender management.--

(1) In general.--The Bureau of Prisons shall make available appropriate treatment to sex offenders who are in need of and suitable for treatment, as follows:

(A) Sex offender management programs.--The Bureau of Prisons shall establish non-residential sex offender management programs to provide appropriate treatment, monitoring, and supervision of sex offenders and to provide aftercare during pre-release custody.

(B) Residential sex offender treatment programs.--The Bureau of Prisons shall establish residential sex offender treatment programs to provide treatment to sex offenders who volunteer for such programs and are deemed by the Bureau of Prisons to be in need of and suitable for residential treatment.

(2) Regions.--At least 1 sex offender management program under paragraph (1)(A), and at least one residential sex offender treatment program under paragraph (1)(B), shall be established in each region within the Bureau of Prisons.

-3-

(3) Authorization of appropriations.--There are authorized to be appropriated to the Bureau of Prisons for each fiscal year such sums as may be necessary to carry out this subsection.

(g) CONTINUED ACCESS TO MEDICAL CARE.—

(1) IN GENERAL.—In order to ensure a minimum standard of health and habitability, the Bureau of Prisons should ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning.

(2) DEFINITION.—In this subsection, the term "community confinement" has the meaning given that term in the application notes under section 5F1.1 of the Federal Sentencing Guidelines Manual, as in effect on the date of the enactment of the Second Chance Act of 2007.

[BOP Editor's Note: The definition of "community confinement" provided in the application notes under U.S.S.G. § 5F1.1 on April 9, 2008, is as follows:

"'Community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours."]

-4-

# § 3624. Release of a prisoner

(as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

\*     \*     \*

~~(c) Pre-release custody.—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.~~

(c) PRELEASE CUSTODY.—

(1) IN GENERAL.—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) HOME CONFINEMENT AUTHORITY.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) ASSISTANCE.—The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) NO LIMITATIONS.—Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) REPORTING.—Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

(6) ISSUANCE OF REGULATIONS.—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that

-1-

placement in a community
correctional facility by the Bureau
of Prisons is—

(A) conducted in a manner
consistent with section 3621(b) of
this title;

(B) determined on an individual
basis; and

(C) of sufficient duration to
provide the greatest likelihood
of successful reintegration into
the community.

Attachment 9

~S381.058

U.S. DEPARTMENT OF JUSTICE

INMATE ACTIVITY RECORD

CDFRM    MAY 94
FEDERAL BUREAU OF PRISONS

| NAME | REGISTER NUMBER | INSTITUTION |
|------|------|------|
| Petersen, Allan | 03533-094 | FPC Montgomery, AL |

| Date | Issue | Initials | Staff Members |
|------|------|------|------|
| 6-20-07 | Pgm Review | M | Nancy Carver |

ACTION

Routine Review

| Date | Issue | Initials | Staff Members |
|------|------|------|------|
| 12-12-07 | Pgm Rev | M | Nancy Carver |

ACTION

Routine Review

| Date | Issue | Initials | Staff Members |
|------|------|------|------|
| 5-8-08 | 2nd Chance Act Review | M | Rowe |

ACTION

Advised that due to resources 6 months RRC Placement is
sufficient This review is due to 2nd Chance Act. Inmate does not
Placement based upon needs.  AD                agree with just 6 months

| Date | Issue | Initials | Staff Members |
|------|------|------|------|
| | | | |

ACTION

| Date | Issue | Initials | Staff Members |
|------|------|------|------|
| | | | |

ACTION

This form may be replicated via WP)

Replaces BP-381(58) of OCT 88

FILE IN SECTION 2 UNLESS APPROPRIATE FOR PRIVACY FOLDER

## SECTION 2

ATTACHMENT 5

```
    DSC5B          *        INMATE DISCIPLINE DATA        *     03-07-2008
    PAGE 001       *     CHRONOLOGICAL DISCIPLINARY RECORD  *     08:56:43

    REGISTER NO: 03533-094 NAME..: PETERSEN, ALLAN A
    FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO    MOS PRIOR TO 03-07-2008

    ------------------------------------------------------------------------------
    REPORT NUMBER/STATUS.: 1507342 - SANCTIONED INCIDENT DATE/TIME: 08-30-2006 0800
    DHO HEARING DATE/TIME: 10-19-2006 1500
    FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
    REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                           MAIL IN CARE OF ANOTHER INMATE.
       410  USING MAIL W/O AUTH - FREQ: 3
            DIS GCT    / 7 DAYS / CS
            COMP:010 LAW:N
            DS         / 15 DAYS / CS / SUSPENDED 180 DAYS
            COMP:   LAW:
    ------------------------------------------------------------------------------
    REPORT NUMBER/STATUS.: 1506830 - SANCTIONED INCIDENT DATE/TIME: 08-29-2006 1217
    DHO HEARING DATE/TIME: 10-19-2006 1445
    FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
    REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                           MAIL IN CARE OF ANOTHER INMATE.
       410  USING MAIL W/O AUTH - FREQ: 2
            DS         / 7 DAYS / CS / SUSPENDED 180 DAYS
            COMP:   LAW:
            LP COMM    / 60 DAYS / CS
            COMP:   LAW:   EFFECTIVE 11-19-2006 TO 01-18-2007
    ------------------------------------------------------------------------------
    REPORT NUMBER/STATUS.: 1506831 - SANCTIONED INCIDENT DATE/TIME: 08-29-2006 0730
    DHO HEARING DATE/TIME: 10-19-2006 1430
    FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
    REPORT REMARKS.......: ADMITTED SENDING MAIL ASKING THE RECIPIENT TO SEND HIS
                           MAIL IN CARE OF ANOTHER INMATE.
       410  USING MAIL W/O AUTH - FREQ: 1
            CHG QTRS   / CS
            COMP:   LAW:   HOUSE IN LOWEST STATUS HOUSING AVAILABLE.
            LP COMM    / 30 DAYS / CS
            COMP:   LAW:   EFFECTIVE 10-19-2006 TO 11-18-2006.
    ------------------------------------------------------------------------------
    REPORT NUMBER/STATUS.: 1447008 - SANCTIONED INCIDENT DATE/TIME: 03-20-2006 1500
    DHO HEARING DATE/TIME: 10-19-2006 1415
    FACL/CHAIRPERSON.....: MRG/LOSIEWICZ
    APPEAL CASE NUMBER(S): 415681
    REPORT REMARKS.......: ADMITTED SENDING LOCAL USE ONLY SHOES FROM FCI SEY TO
                           FCI MRG, HIDDEN INSIDE BOX MARKED LEGAL MATERIAL.
       305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
            LP COMM    / 30 DAYS / CS
            COMP:   LAW:   SANCTION ALREADY SERVED PRIOR TO REPORT BEING
                           REMANDED FOR REHEARING.



    G0002       MORE PAGES TO FOLLOW . . .
```

```
  DSC5B           *        INMATE DISCIPLINE DATA       *     03-07-2008
PAGE 002 OF 002 *     CHRONOLOGICAL DISCIPLINARY RECORD  *     08:56:43

REGISTER NO: 03533-094 NAME..: PETERSEN, ALLAN A
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO     MOS PRIOR TO 03-07-2008

----------------------------------------------------------------------------
REPORT NUMBER........: 1447008 (REHEARD 10-19-2006 1415)
DHO HEARING DATE/TIME: 04-12-2006 1430
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1012535 - SANCTIONED INCIDENT DATE/TIME: 07-23-2002 1000
UDC HEARING DATE/TIME: 07-24-2002 1515
FACL/UDC/CHAIRPERSON.: SEY/COASTAL/J. EARP
APPEAL CASE NUMBER(S): 274628
REPORT REMARKS.......: INMATE ADMITS THAT THE INCIDENT REPORT IS TRUE.
    303A POSSESSING UNAUTHORIZED MONEY - FREQ: 1
         EXTRA DUTY / 20 HOURS / CS
         COMP:    LAW:    20 HOURS EXTRA DUTY TO BE COMPLETED NLT 8/7/02.
    406  USING PHONE OR MAIL W/O AUTH - FREQ: 1
         LP VISIT   / 30 DAYS / CS
         COMP:    LAW:    30 DAYS LOSS OF VISITING FROM 7/24/02 - 8/23/02
    408  CONDUCTING A BUSINESS W/O AUTH - FREQ: 1
         LP PHONE   / 30 DAYS / CS
         COMP:    LAW:    30 DAYS LOSS OF PHONE FROM 7/24/02 - 8/23/02
----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 558698 - SANCTIONED  INCIDENT DATE/TIME: 01-31-1998 1645
UDC HEARING DATE/TIME: 02-03-1998 1420
FACL/UDC/CHAIRPERSON.: RBK/DEL/RADLOFF W
REPORT REMARKS.......: ADMITTED INFRACTION
    317  FAILING TO FOLLOW SAFETY REGS - FREQ: 1
         LOSE PRIV  / 15 DAYS / CS
         COMP:    LAW:    LOSS OF COMMISSARY, EFFECTIVE 2/3/98 TO 2/17/98



G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# Attachment 6



# Program
# Statement

|            |                                                            |
| ---------- | ---------------------------------------------------------- |
| **OPI:**   | CPD/CPB                                                     |
| **NUMBER:**| P5100.08                                                   |
| **DATE:**  | 9/12/2006                                                  |
| **SUBJECT:**| Inmate Security Designation and Custody Classification    |

1. **PURPOSE AND SCOPE.** This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system. The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2. **PROGRAM OBJECTIVES.** The expected results of this Program Statement are:

   a. Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b. Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3. **SUMMARY OF CHANGES.** This revision incorporates Executive Staff decisions 03-04-05 and 99-03-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a. The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score." (Chapter 4, Page 8 and Chapter 6, Page 5)

same day as sentencing.  Voluntary Surrender Credit may only be applied to the initial term of confinement; it may not be applied to any subsequent Supervised Release, Mandatory Release or parole Violation return to custody.

5a.  **VOLUNTARY SURRENDER DATE.**  If the court has provided for voluntary surrender, enter the date of the voluntary surrender in this block.  If the court provided for voluntary surrender but did not provide a specific date for the surrender, the DSCC will contact the court to establish a mutually agreeable date.

**NOTE:**     In cases where the court allows the inmate to voluntarily surrender but the inmate will not receive (-3) points on this item the date will still be entered on this item.

5b.  **VOLUNTARY SURRENDER LOCATION.**  The DSCC will note whether the inmate is to voluntarily surrender to the USMS or to the designated institution.

6.  **MONTHS TO RELEASE**

| 6. MONTHS TO RELEASE _____ |
|---|

This item reflects the estimated number of months the inmate is expected to be incarcerated.  Consecutive federal sentences will be added together for classification purposes.  Federal sentences may have different beginning dates, based on the Judgment Order.  There may even be a computation in SENTRY with a beginning date in the future.  Based on the inmate's sentence(s), enter the total number of months remaining, less 15% (for sentences over 12 months), and credit for any jail time served.  This item is not figured into the security point total but impacts the Sentence Length Public Safety Factor.

**Example:**  An adult convicted of Breaking and Entering under the Sentence Reform Act is sentenced to eight years.  The expected length of incarceration is (96 months x 85% = 81.6 months).  Round to the nearest whole number to get 82 and subtract any jail time credit (180 days) = 76 months to release.

**NOTE:**     Enter 540 months for death penalty cases, life sentences, and Parolable life sentences for which a parole date has not been established.

Attachment 7



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5880.28
**DATE:** CN-06, 7/19/99
**SUBJECT:** Sentence Computation Manual (CCA of 1984)

1. **PURPOSE AND SCOPE.** This Program Statement transmits the "Sentence Computation Manual" which establishes the policies and procedures for the computation of sentences imposed for violations of the United States Code under the statutes of the Comprehensive Crime Control Act of 1984 (CCCA).

On October 12, 1984, President Reagan signed the Comprehensive Crime Control Act of 1984 (CCCA) into law. Two major components of this law, the Sentencing Reform Act of 1984 (SRA) and the Insanity Reform Act of 1984, completely restructured the sentencing guidelines and policies of the United States Courts.

After the effective date of the SRA on November 1, 1987, a number of United States Court decisions found all or parts of the SRA unconstitutional. As a result, the SRA was implemented nationally in various ways.

On January 18, 1989, in **Mistretta v. U.S.**, the Supreme Court considered the constitutionality of the sentencing guidelines and ruled that the guidelines were constitutional. This Manual provides instructions for computing sentences imposed under the CCCA both before and after the **Mistretta** decision.

2. **DIRECTIVES AFFECTED**

   a. **Directives Rescinded.** None.

   b. **Directives Referenced.** None.

P.S. 5880.28
February 21, 1992
Page 3 - 19

**EXAMPLE NO. 9 (continued)**

## YEARLY GCT/PARTIAL YEAR GCT/SRD/6 WEEKS DATE CALCULATIONS

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| Anniversary Date | Consideration Begins | Vested Date | Maximum To Award | Actual Award | Running Total | Release Date 05-08-90 |
|---|---|---|---|---|---|---|
| 01-10-90 | 01-10-90 | 01-24-90 | 54 | | 54 | 03-15-90 |

```
Tentative SRD (54 GCT)        =  90-03-15  =   18702
Last Anniversary Date         =  90-01-09* = -18637
Partial Year Remaining                     =      65 Days

65 x .148  =   9.62
65 - 9     =   56 x .148  =  8.288 + 56  =  64.288
65 - 8     =   57 x .148  =  8.436 + 57  =  65.436

Tentative SRD 954 GCT)        =  90-03-15  =   18702
Prorated GCT for Partial Year              = -     8  Days
SRD                           =  90-03-07  =   18694
6 Weeks Consideration Time                 = -    41  Days
6 Weeks Date                  =  90-01-25  =   18653
```

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| Anniversary Date | Consideration Begins | Vested Date | Maximum To Award | Actual Award | Running Total | Release Date 05-08-90 |
|---|---|---|---|---|---|---|
| | 01-25-90 | 03-07-90 | 8 | | 62 | 03-07-90 |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## 6 MONTHS/10% DATE CALCULATION

```
SRD                          =  90-03-07  =   18694
DCB                          =  89-01-09* = -18272
Days To Be Served                         =     422  Days
10%                                       = x    .10
Pre-Release Custody                       =    42.2  Days

SRD                          =  90-03-07  =   18694
Pre-Release Custody                       = -    42  Days
                                              18652
                                          +     1  Day
10% Date (Less Than 6 Mos.) =  90-01-25  =   18653
```

Attachment 8

## § 3621. Imprisonment of a convicted person (as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

(a) Commitment to custody of Bureau of Prisons.--A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. <u>Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.</u>

(c) Delivery of order of commitment.--When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

(d) Delivery of prisoner for court appearances.--The United States marshal shall, without charge, bring a prisoner into court or return him to a prison facility on

order of a court of the United States or on written request of an attorney for the Government.

(e) Substance abuse treatment.--

(1) Phase-in.--In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)--

(A) for not less than 50 percent of eligible prisoners by the end of fiscal year 1995, with priority for such treatment accorded based on an eligible prisoner's proximity to release date;

(B) for not less than 75 percent of eligible prisoners by the end of fiscal year 1996, with priority for such treatment accorded based on an eligible prisoner's proximity to release date; and

(C) for all eligible prisoners by the end of fiscal year 1997 and thereafter, with priority for such treatment accorded based on an eligible prisoner's proximity to release date.

(2) Incentive for prisoners' successful completion of treatment program.--

(A) Generally.--Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall

remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such conditions on determining that substance abuse has recurred.

(B) Period of custody.--The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(3) Report.--The Bureau of Prisons shall transmit to the Committees on the Judiciary of the Senate and the House of Representatives on January 1, 1995, and on January 1 of each year thereafter, a report. Such report shall contain--

(A) a detailed quantitative and qualitative description of each substance abuse treatment program, residential or not, operated by the Bureau;

(B) a full explanation of how eligibility for such programs is determined, with complete information on what proportion of prisoners with substance abuse problems are eligible; and

(C) a complete statement of to what extent the Bureau has achieved compliance with the requirements of this title.

(4) Authorization of appropriations.--There are authorized to carry out this

subsection such sums as may be necessary for each of fiscal years 2007 through 2011.

(5) Definitions.--As used in this subsection--

(A) the term "residential substance abuse treatment" ~~means a course of individual and group activities, lasting between 6 and 12 months, in residential treatment facilities set apart from the general prison population~~

~~(i) directed at the substance abuse problems of the prisoner;~~

~~(ii) intended to develop the prisoner's cognitive, behavioral, social, vocational, and other skills so as to solve the prisoner's substance abuse and related problems; and~~

~~(iii) which may include the use of pharmacoptherapies [FN1], if appropriate, that may extend beyond the treatment period;~~ means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period);

(B) the term "eligible prisoner" means a prisoner who is--

(i) determined by the Bureau of Prisons to have a substance abuse problem; and

(ii) willing to participate in a residential substance abuse treatment program; and

(C) the term "aftercare" means placement, case management and

monitoring of the participant in a community-based substance abuse treatment program when the participant leaves the custody of the Bureau of Prisons.

(6) Coordination of Federal assistance.--The Bureau of Prisons shall consult with the Department of Health and Human Services concerning substance abuse treatment and related services and the incorporation of applicable components of existing comprehensive approaches including relapse prevention and aftercare services.

(f) Sex offender management.--

(1) In general.--The Bureau of Prisons shall make available appropriate treatment to sex offenders who are in need of and suitable for treatment, as follows:

(A) Sex offender management programs.--The Bureau of Prisons shall establish non-residential sex offender management programs to provide appropriate treatment, monitoring, and supervision of sex offenders and to provide aftercare during pre-release custody.

(B) Residential sex offender treatment programs.--The Bureau of Prisons shall establish residential sex offender treatment programs to provide treatment to sex offenders who volunteer for such programs and are deemed by the Bureau of Prisons to be in need of and suitable for residential treatment.

(2) Regions.--At least 1 sex offender management program under paragraph (1)(A), and at least one residential sex offender treatment program under paragraph (1)(B), shall be established in each region within the Bureau of Prisons.

(3) Authorization of appropriations.--There are authorized to be appropriated to the Bureau of Prisons for each fiscal year such sums as may be necessary to carry out this subsection.

(g) CONTINUED ACCESS TO MEDICAL CARE.—

(1) IN GENERAL.—In order to ensure a minimum standard of health and habitability, the Bureau of Prisons should ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning.

(2) DEFINITION.—In this subsection, the term "community confinement" has the meaning given that term in the application notes under section 5F1.1 of the Federal Sentencing Guidelines Manual, as in effect on the date of the enactment of the Second Chance Act of 2007.

[BOP Editor's Note: The definition of "community confinement" provided in the application notes under U.S.S.G. § 5F1.1 on April 9, 2008, is as follows:

"'Community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours."]

-4-

## § 3624. Release of a prisoner

(as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

\*    \*    \*

~~(c) Pre-release custody.—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.~~

(c) PRELEASE CUSTODY.—

(1) IN GENERAL.—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) HOME CONFINEMENT AUTHORITY.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) ASSISTANCE.—The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) NO LIMITATIONS.—Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) REPORTING.—Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

(6) ISSUANCE OF REGULATIONS.—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that

placement in a community
correctional facility by the Bureau
of Prisons is—

(A) conducted in a manner
consistent with section 3621(b) of
this title;

(B) determined on an individual
basis; and

(C) of sufficient duration to
provide the greatest likelihood
of successful reintegration into
the community.

Attachment 9

-S381.058

INMATE ACTIVITY RECORD

J.S. DEPARTMENT OF JUSTICE

CDFRM     MAY 94

FEDERAL BUREAU OF PRISONS

| NAME | | | INSTITUTION |
|---|---|---|---|
| Petersen, Allan | REGISTER NUMBER 03533-094 | | FPC Montgomery, AL |

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 6-20-07 | Pgm Review | M | Rauy Couer |

ACTION

Routine Review

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 12-12-07 | Pgm Rent | M | Rena Cous |

ACTION

Routine Review

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 5-8-08 | 2nd Chance Act Review | M | Rowe |

ACTION

Advised that due to resources 6months RRC Placement is
sufficient This review is due to 2nd Chance Act. Inmate does not
Placement based upon needs.   M   agree with just 6months

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| | | | |

ACTION

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| | | | |

ACTION

This form may be replicated via WP)

Replaces BP-381(58) of OCT 88

ILE IN SECTION 2 UNLESS APPROPRIATE FOR PRIVACY FOLDER

# SECTION 2

Attachment 10



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 7310.04 |
| **DATE:** | 12/16/98 |
| **SUBJECT:** | Community Corrections Center (CCC) Utilization and Transfer Procedure |

1. <u>PURPOSE AND SCOPE</u>.  To provide guidelines to staff regarding the effective use of Community Corrections Centers (CCCs).  This Program Statement defines placement criteria for offenders, requires that staff members start the placement process in a timely manner, and defines the circumstances when inmates may refuse Community Corrections (CC) programs.  It also establishes an operational philosophy for CCC referrals that, whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment as outlined herein.

CCCs provide an excellent transitional environment for inmates nearing the end of their sentences.  The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills.

One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community.  Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle.  While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Finally, the scope of this Program Statement has been extended to include CCC consideration/placement of District of Columbia Department of Corrections inmates.

(5) <u>Intensive Confinement Center (ICC)</u>. A lengthy period of Community Corrections Center confinement follows the completion of the ICC program's institutional phase. The CCC time is divided among the restrictive Community Corrections Component, the Prerelease Component, and Home Confinement. Specific referral procedures are outlined in the ICC Program Statement.

8. <u>RELEASE PLAN</u>. Staff shall begin release planning at an inmate's first team meeting, normally the initial classification, and shall continue throughout the inmate's confinement. The following guidelines apply:

a. Planning early in an inmate's period of confinement is necessary to ensure release preparation needs are identified and appropriate release preparation programs are recommended.

b. Preliminary decisions regarding eligibility for CC Programs are to be made well in advance of the last year of confinement.

c. A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date.

9. <u>CCC CRITERIA AND REFERRAL GUIDELINES</u>

a. <u>Regular Referrals</u>. Staff shall make recommendations for CCC placements based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly. CCCs are a program element and are not to be used as a reward for good institutional behavior, although an inmate's institutional adjustment may be a factor in making a referral determination.

A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources. Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs. Additionally, inmates who are required to spend a portion of time in a CCC as a condition of release (i.e. supervised release or court order) do not require an extended Bureau CCC placement. For example, if the Unit Team determines the inmate needs a six month CCC placement, but the inmate is required to stay in a CCC for 90 days as a condition of release, then the institution shall ordinarily refer the inmate for a 60-90 day CCC placement.

**Referrals to CCM offices should include a recommendation regarding the length of stay (range), such as recommending 60 to 90 days or 90 to 120 days, etc.  This range of at least 30 days allows the CCM to match population needs with budgetary and CCC bed space resources, a process which requires this flexibility.**

However, there will be cases when the institution, for various management reasons, wants the CCM to place the inmate not earlier than a specific date.  Then, the CCC referral form should specify a recommended placement date rather than a range and further state that the CCM should not adjust that date.  The CCM shall adhere to the recommended date, with any adjustment only being downward if budget and/or bed space constraints are a factor.

The following CCC referral guidelines apply:

(1)  An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification.  In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

(2)  The ultimate goal is to maximize each eligible inmate's chances for successful release and a law-abiding life.

(3)  When an inmate has a history of escape or failure in one or more CC Programs, careful review and consideration should be given regarding the suitability of participation and the length of placement.

(4)  Inmates with minor medical conditions or disabilities may also be considered for community placement.  Inmates are required to assume financial responsibility for their health care while assigned to community programs.  Such inmates must provide sufficient evidence to institution staff of their ability to pay for health care while at a CCC prior to the referral being made.  When an inmate is unable or unwilling to bear the cost of necessary health care, the inmate shall be denied placement.

(5)  Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement shall be transferred to a camp for intermediate placement.  The inmate should have completed the Institution Release Preparation Program at the parent institution.  The parent institution shall complete the CCC referral packet and the camp should be closer to the inmate's release residence.  This process should be completed to allow the

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Alan Peterson                                )
                                             )
     Petitioner,                             )
                                             )
          v.                                 )          Civil Action No. 2:08-cv-0040-WKW
                                             )
Darlene Drew                                 )
                                             )
     Respondent.                             )

## Declaration of Jeff Johnson

I, Jeff Johnson, do hereby certify, declare, and state as follows:

1.      I am employed by the Federal Bureau of Prisons ("BOP") as a Correctional
Program Specialist at the Designation and Sentence Computation Center (DSCC), in
Grand Prairie, Texas.  I have worked for the Bureau of Prisons since April 1988.  I have
worked in the area of inmate sentence computations since April 1990.  I have been
employed as a Correctional Program Specialist at the Designation and Sentence
Computation Center since January 2006.  I'm over the age of 21 years and have
relevant information pertaining to this matter.

2.      My duties include providing litigation assistance to the United States Attorney's
Office in cases where federal inmates challenge their sentence computations, which
includes auditing and reviewing such computations.

3.      I have reviewed the allegations of Petitioner, Alan Peterson, federal register
number 03533-094.  Petitioner alleges that his statutory release date is inaccurate and
should be re-calculated as outlined in Program Statement 5100.08, Inmate Security
Designation and Custody Classification, Chapter 4, page 6, "months remaining to
release", resulting in an earlier release date of April 1, 2009.

4.    The BOP denies Petitioner's claim that he should be released on his "months to release" date as determined by his calculation.  The policy used for guidance in calculating a prisoner's release date is P.S. 5880.28, <u>Sentence Computation Manual</u> <u>(CCCA of 1984)</u> (Attachment 7).  Below is an explanation of Petitioner's sentence computation.

5.    Petitioner was arrested on February 17, 1995, for charges of smuggling cocaine. He released on bond on February 22, 1995 (Attachment 4 - United States Marshals Service Individual Custody and Detention Form 129).  On December 7, 1995, Petitioner was re-arrested for bond violations and detained (Attachment 4).  On July 1, 1996, Petitioner was sentenced to 188 months confinement for Conspiracy to Possess Cocaine with Intent to Distribute (Attachment 2 - Judgement and Commitment Order).

6.    A sentence computation was prepared commencing Petitioner's sentence on the date it was imposed, July 1, 1996.  He received credit for all time in custody from the date of his initial arrest on February 17, 1995, until his release on bond on February 22, 1995.  He also received credit from the date of his re-arrest on December 7, 1995, until the day before his sentencing on June 30, 1996, for a total of 213 days prior custody credit.  Petitioner's projected satisfaction date is now July 30, 2009. (Attachment 2 - Sentence Monitoring Computation Data Form).

7.    **DATE SENTENCE BEGINS:**     **1996-07-01** - *Attachment 3,***page 2**
      **TERM IN EFFECT:**     **188** months - *Attachment 3, page 2*
      **PRIOR CUSTODY CREDIT:**     **213** days   -   *Attachment 3, page 2*
      **FULL TERM DATE:**     **2011-07-31** - *Attachment 3, page 2*
      **GOOD CONDUCT TIME CREDIT:**   **731** days  - *Attachment 3, page 2*
      **GOOD CONDUCT TIME DISALLOWANCE** **7** days - *Attachment 5,* Attachment 3, page 2
      **STATUTORY RELEASE DATE: 2009-07-30** - *Attachment 3, page 2*

      Project Release Date:     2009-07-30
      Minus the date of form:     2008-03-07
      Equals month to release:       1  4 23
                                  16 months 23 days

8.     Based on this information, the months to release is accurate only for the purpose of determining a prisoner's security and custody classification.  It reflects the estimated number of months the inmate is expected to be incarcerated, as stated in Program Statement 5100.08, Inmate Security Designation and Custody Classification, Chapter 4, page 6. (Attachment 6)  This formula is merely an approximation, or an "estimate" used in scoring a prisoner's custody and classification level, and is not intended to calculate an inmate's lawful release date.

9.     Petitioner's statutory release date is calculated, certified and monitored by the DSCC.  The calculation is by the execution of the sentence imposed in the Judgment in a Criminal Court is completed in accordance with Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984) (Attachment 7).  This established statutory release date is used to lawfully release an inmate from custody.

I declare under the penalty of perjury and pursuant to 28 U.S.C. 1746 the foregoing is true and correct to the best of my knowledge and belief.

Executed this _13th_ day of May, 2008.

_____

Jeff Johnson, Correctional Program Specialist
Federal Bureau of Prisons
Designations and Computation Sentencing Center
Grand Prairie, Texas

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

Allan Peterson )
)
 Petitioner, )
)
v. )   Civil Action No. 2:08-cv-0040-WKW
)
Darlene Drew· )
)
 Respondent. )

### Declaration of Michael Rowe

I, Michael Rowe, do hereby certify, declare, and state as follows:

1. I am employed by the Federal Bureau of Prisons (Bureau) as a Case Manager at the Federal Prison Camp in Montgomery, Alabama (FPC Montgomery). I have been employed by the BOP since 1987. I have been employed as a Case Manager at FPC Montgomery since August 2000. Prior, I held positions of increasing authority throughout the BOP. I am over the age of 21 and have information relevant to this case.

2. Included in my duties as Case Manager is to review central files of inmates to make recommendations for the inmate's placement in Residential Reentry Centers (RRC). After review of the inmate's central file and previous program reviews I make an initial recommendation for RRC placement. The recommendation is then reviewed by several other staff before final approval by the Warden.

3. I have reviewed the allegations of Petitioner, Allan Peterson, federal register number 03533-094 challenging the directive limiting RRC placement to the lesser of the last 10% of a sentence. He asserts that since his release date should be April 9, 2009, his pre-release date should be October 1, 2008. As a basis for his early release to an RRC Petitioner claims his lengthy sentence of 15 years justifies his need

to be in an RRC for one year.

4.      On April 9, 2008, Congress passed the Second Chance Act, Pub. L.No.
110-199. (Attachment 8). The Act requires that inmates be individually considered for
pre-release RRC placements using the following five-factor criteria from 18 U.S.C. §
3621(b):

    (1)    The resources of the facility contemplated;
    (2)    The nature and circumstances of the offense;
    (3)    The history and characteristics of the prisoner;
    (4)    Any statement by the court that imposed the sentence:
        (a)    concerning the purposes for which the sentence to imprisonment
                was determined to be warranted; or
        (b)    recommending a type of penal or correctional facility as
                appropriate; and
    (5)    Any pertinent policy statement issued by the U.S. Sentencing
        Commission.

The Act also requires staff to ensure that each pre-release RRC placement decision is
"of sufficient duration to provide the greatest likelihood of successful reintegration into
the community." See 18 U.S.C. 3624(c)(6)(C) (amended).

5.      Additionally, assessing inmates under the above criteria necessarily
includes continuing to consider the more specific, and familiar, correctional
management criteria found in Program Statement 7310.04, including but not limited to,
the inmate's needs for services, public safety, and the necessity of the BOP to manage
its inmate population responsibly.

6.      As a result of the new policy, I reassessed Petitioner's release preparation
date in accordance with the five criteria reflected above. RRCs provide suitable
residence, structured programs, job placement, and counseling, while the inmates'
activities are closely monitored. All RRCs offer drug testing and counseling for alcohol
and drug-related problems. The primary purpose of RRC placement is to assist
inmates in reintegrating into society following incarceration. The RRC is a restrictive
placement and if the inmate violates a condition he is subject to disciplinary action.
This disciplinary action may include the return to the prison and the revocation of GCT,
which will result in a longer prison term.

7.      Additionally, a number of factors must be weighed to determine the length of RRC placement for inmates, including their individual needs and existing community resources. The rationale is that the more issues or needs an inmate has, the longer he will need the assistance of a transitional placement. Those inmates who have stronger community ties, outside resources, education, employment history, non violent offenses, and are less of a management problem in prison require less time in the structured environment of an RRC. Thus, the RRC focuses more on those inmates that require a structure environment where they can be monitored, counseled and held accountable prior to being released back into the community. Placement may also be delayed due to the lack of bed space in the RRC and or resources of the Probation Department. All referrals are made with these considerations in mind.

8.      After weighing the factors outlined in 18 U.S.C. § 3621(b), it was determined that Petitioner should be recommended for a RRC placement of six months. As part of my determination, I reviewed several documents, including Petitioner's PSI, Judgment and Commitment order, work institution history, education history prior and during incarceration, discipline history, and outside resources.

9.      **Consideration of Factors Listed in 18 U.S.C. § 3621(b).**

        **(1)   The resources of the facility contemplated**  At this time, there is not a halfway house in the Virgin Islands. Thus, when Petitioner releases, he will be placed directly on home confinement under direct supervision of the U.S. Probation Department. The U.S. Probation Department in the Virgin Islands has a cap of 12 people, and they so they make the final determination regarding home confinement on all releases within their jurisdiction.

        **(2)   The nature and circumstances of the offense**

        The records reflect Petitioner was committed to Bureau of Prisons custody on September 11, 2006, to serve a 21 month sentence for Conspiracy to Devise a Scheme or Artifice to Defraud by Mail Fraud, Mail Fraud, and Wire Fraud. The circumstances of the offense involve Peterson planning and conspiring with others to transport cocaine from the Virgin Islands to Atlanta, Georgia. He has a good conduct time release date of March 19, 2008. Petitioner's crime is non-violent and nothing in his history or the

nature and circumstances of his offense indicate he would pose a safety issue in the community. Based on the above, Petitioner requires less RRC resources and monitoring.

### (3)    The history and characteristics of the prisoner

Petitioner's crime is non-violent and nothing in his history or the nature and circumstances of his offense indicate he would pose a safety issue in the community. His overall institution adjustment has been good with his last incident report being in 2006. Petitioner has a high school diploma and has some college. Prior to his conviction for the instant offense in 1995, Petitioner was employed with the Virgin Islands Fire Department in St. Thomas from 1989 to 1995. Prior to this position, Petitioner has always maintained steady employment. He also has some training in automotive repair. Additionally, while incarcerated, Petitioner has received 60 credit hours in graphic arts, 371 hours in computer classes, and 100 hours in the career learning program. He is currently employed in the Education Department doing clerical work. Thus, it appears Petitioner is articulate and employable. While he will need some time to find employment, he is employable, and should not need more than 6 months.

Petitioner has not had any visitors since his incarceration at FPC Montgomery. This is likely caused by the fact that he is from the Virgin Islands. He has made 100 phone calls in the last six months, the majority of them to the Virgin Islands. He has sent and received 309 e-mails. Petitioner has received monetary support in the amount of $997 since August 2007. All of these factors indicate he has post incarceration resources. An inmate with post incarceration resources generally needs less RRC support and transitional services because they have more community and family support.

### (4)    Any statement by the court that imposed the sentence.

#### (a)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

#### (b)    recommending a type of penal or correctional facility as appropriate.

The Judgement and Commitment order does not reflect any concerns expressed by the court regarding Petitioner's imprisonment. The court did not recommend any

type of penal or correctional facility. Nor did the court indicate that Petitioner needed a specified amount of time in an RRC.

> **(5)    Any pertinent policy statement issued by the U.S. Sentencing Commission.**

As of the enactment of the Second Chance Act, the U.S. Sentencing Commission has not issued any policy statements related to the Bureau's pre-release RRC placement procedures.

10.    Based on the above factors, I determined that Petitioner would only require an RRC placement of up to six months. Petitioner should not require the structured environment and resources of the RRC and Probation Department for a longer period as he should be able to successfully reintegrate back into the community in the allotted time.

11.    It is important to note that my assessment that Petitioner would only require up to up to six months RRC placement is only a recommendation. The final determination will be made by the RRC in consultation with the U.S. Probation Department.

12.    On May 8, 2008, I advised Petitioner that he was being recommended for an RRC for six months and if approved, his release date to the RRC would be January 30, 2009.

I declare under the penalty of perjury and pursuant to 28 U.S.C. 1746 the foregoing is true and correct to the best of my knowledge and belief.

Executed this _15th_ day of May, 2008.

Michael Rowe, Case Manager
FPC Montgomery
Federal Bureau of Prisons