IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALLAN A. PETERSEN<br>Petitioner, | * Civil No.# 2:08-cv-040-WKW<br>*<br>* |
| vs. | *<br>* |
| DARLENE A. DREW, WARDEN,<br>FPC Montgomery,<br>Respondent. | *<br>*<br>* |

**PETITIONER'S REPLY TO THE RESPONDENT'S RESPONSE
DATED MAY 16, 2008, PURSUANT TO 2241 HABEAS CORPUS**

Comes now the Petitioner, Allan A. Petersen, in pro-se, replying to the Respondent's Response dated May 16, 2008, respectfully with declarations and evidence showing the Respondent's use of a invalid statutory regulation upon Petitioner, calculating his release date, and prerelease date based soley upon time served, instead of considering the factors set out in 18 USC § 3621(b). The Respondent calculated Petitioner's sentence for prerelease using the 10% percent rule, 28 CFR §§ 570.20-570.21, limiting his placement only to six (6) months home confinement beginning January 30, 2009, which was established prior to the Case Manager's [Michael Rowe] alleged assessment conducted on May 8, 2008.

**1. Petition**

Section 2241 constitutes the general habeas corpus statute under which federal prisoners may seek relief for claims of unlawful custody. A petition brought under § 2241 challenges the very fact or duration of physical imprisonment, and seeks a determination that the petitioner is entitled to immediate release or a speedier release from that imprisonment. Preiser v. Rodriguez, 411 U.S. 475, 484-86, 500 (1973). See also Benson v. New Jersey State Parole Board, 947 F.Supp. 827, 829-

31 (D.N.J. 1996)(noting § 2255 generally appropriate only for claims challenging continued execution of sentence for which immediate or speedier release is appropriate); United States v. Walker, 980 F.Supp. 144, 145-46 (E.D. Pa. 1997)(challenges to a sentence as imposed should be brought under § 2255, while challenges to the manner in which a sentence is being executed should be brought under § 2241).

## ARGUMENT

(a): The Respondent's Argument on Subject Matter Jurisdiction in this case is misplaced. The Respondent claims Petitioner essentially seeks to challenge his criminal conviction which must first be brought under 28 USC § 2255. Moreover, the Respondent claims Petitioner cannot show that a § 2255 petition is inadequate or ineffective to challenge the legality of his detention. The above listed case laws and precedents are sufficient law to show that this court has proper jurisdiction to adjudicate this case pursuant to 2241, which challenges only the Bureau of Prisons (BOP) regulations restricting the pre-release time he may serve in a Community Correction Center, and the calculation thereof pursuant to PS 5100.08.

A habeas petition under § 2241 is proper vehicle for prisoners to challenge Bureau of Prisons regulations governing pre-release confinement. See: Martin v. Willingham, 430 F.Supp.2d 82 (D.Conn. 2006); Jones v. Zenk, 495 F.Supp.2d at 1301 (N.D.Ga. 2007); McDonald v. Sawyer, No. 1:03cv235RWS, 2002 WL 24046340 (N.D.Ga. Feb. 14, 2003).

## 2. Complaint

The Complaint filed in this case challenged the calculation of Petitioner's time for placement in a community confinement center, and was later amended timely on the 26th of February 2008, declaring the BOP regulations 28 CFR § 570.20- and 570.21 limiting transfer to CCC/RRC to lesser of six months or ten percent of his sentence unlawful or invalid in his case.

However, on May 16, 2008, the Respondent responded to a totally different claim from what Petitioner submitted to the court, stating:

> "The petitioner has filed a pro-se habeas petition pursuant to 28 USC § 2241, claiming the Bureau's determination that he is not eligible for Good Time Credit (GCT) for 12 months on his old sentence." Id.

See: **Response at page 1.**

Thus, with knowledge of this intentional and willful recharacterization of Petitioner's claim(s), the Respondent failed to address the claims raised by Petitioner and judgment should be ruled in his favor with the granting of this 2241 petition based upon the merits of the case.

**3. Pre-release calculation date.**

The pre-release calculation date of **January 30, 2009,** [WAS] already established by the Respondent(s) on **June 20, 2007,** during Program Review without him [**Case Manager Michael Rowe**] making any individual consideration with the five-factor criterias from 18 U.S.C. § 3621(b), conducted by himself on **May 8, 2008,** according to his declaration. See: **Plaintiff's Complaint Attachment D.**

On June 20, 2007, Case Manager Michael Rowe, signed the following as long term goals requirement for Petitioner on his Program Review Report:

(1) Complete RPP by 7-30-2008
(2) Obtain gainful employment by 7-30-08
(3) Begin savings plan for release until 1-30-09.

See: **Plaintiff's Complaint Attachment D/Program Review Report p.2.**

The fact that January 30, 2009, was already established as Petitioner's pre-release date prior to May 8, 2008, clearly shows the five factors was not taken into consideration, but the Respondent relied upon the statutory authority of 28 CFR § 570.21, and Program Statement 7310.04, which are invalid statutes that unlawfully limits and restrict a prisoner's placement into a CCC/RRC based only upon time served. This unlawful procedure was also executed in this case.

More conclusive evidence that shows the date of January 2009 is a pre-determine date of Petitioner's pre-release date without reference to the 5-factors, is revealed in Petitioner's Sentence Monitoring Computation Data on May 5, 2004, where the BOP's date for pre-release preparation is **01-24-2009. See: Petitioner's Declaration Exhibit-D.**

Thus, while on its face § 3621(b) requires the BOP to consider the factors set out, the BOP's strict interpretation and application of the 10% rule categorically prevents the BOP staff from considering those factors, instead they rely on a strict mathamatical formula that considers only time served. Evidence of this, is the fact that, Case Manager Michael Rowe's declaration indicates in clear terms that only on **May 8, 2008,** he weighed the five factors and determined he considers Petitioner for 6 months placement beginning January 30, 2009, in which he advised Petitioner on that day. **See: Respondents Michael Rowe Declaration at Paragraph 12.** However, evidence presented has shown conclusively that the date of January 30, 2009, was earlier given to Petitioner by Case Manager Rowe on June 20, 2007. This established cause for this civil action to be filed at this time. The evidence is clear in this case revealing that 28 CFR § 570.21 is still the controlling statute and rule in the BOP governing prerelease time placement of Petitioner limiting him to only six months when more is needed.

**4. Five-Factor Criteria from 18 USC § 3621(b):**

Under this procedure, Respondent Case Manager Michael Rowe used as his guide Program Statement 7310.04, which authority is formed from 28 C.F.R. §§ 570.20 - 570.21, that limits and restrict a prisoner's placement in a CCC/RRC to the last 10% of his sentence or 6 months whichever is less. **See: Petitioner's Declaration at Exhibit-H, and Michael Rowe's Declaration at paragraph 5.** Thus, the regulation fails to give effect to the clear intent of the statute. Respondent's gesture and argument that the BOP "carefully consider[ed] all of the statutorily-specified factors in its rulemaking," misconceives the individualized nature of

4.

some of the statutory factors, which by definition cannot be addressed by a "one size fit all" approach. See: Fults, 442 F.3d at 1092("Three of the five factors relate to an inmate's individual circumstances. Accordingly, it would not have been possible for the BOP to consider all of the factors when it promulgated the regulations."); Woodall, 432 F.3d at 248 ("[W]hile the commentary accompanying the proposed and final rules specifically discussed some of the § 3621 factors ... at no point does the BOP take into account the requirement that it consider the particular circumstance of individual inmates. By definition, particular circumstances cannot be considered in promulgating a blanket rule."); Evans, 413 F.Supp.2d at 160 ("The BOP [necessarily] cannot consider those factors - as section 3621(b) requires it to do - with a categorical rule prohibiting the BOP from considering an inmate for CCC placement based on the length of her remaining sentence."); Pimentel, 367 F.Supp.2d at 375 ("[U]nlike the rule in Lopez, the February 2005 rule in no way furthers or interprets these factors. Instead, it disregards them.").

Thus, several district courts and Circuit Court of Appeals have held that the BOP February 2005 regulations pursuant to 28 CFR §§ 570.20-570.21, is invalid. See: Evans v. Willingham, 413 F.Supp.2d 155 (D.Conn.2006)(Judge Underhill); Pimentel v. Gonzales, 367 F.Supp.2d 365 (E.D.N.Y.2005); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); United States v. Arthur, 367 F.3d 119, 121 (2d Cir. 2004); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005); Martin v. Willingham, 430 F.Supp.2d 82 (D.Conn. 2006); Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007)("This court joins the Second, Third, and Eight Circuits in concluding 28 C.F.R. §§ 570.20 and 570.21 impermissibly conflict with the clear and unambiguous congressional intent articulated in 18 U.S.C. § 3621(b) and are, therefore invalid. Levine, 455 F.3d at 87; Fults, 442 F.3d at 1092; Woodall, 432 F.3d at 237.").

In considering the five factors which case manager Michael Rowe claimed was considered on May 8, 2008, for Petitioner's placement in a CCC/RRC program of six months home confinement beginning January 30, 2009. There is evidence that he failed to evaluate Petitioner for an additional period of time up to 12 months to a RRC program on the Island of Puerto Rico where Petitioner was employed before his arrest. **See: Petitioner's Declaration at Exhibit-I.**

Exhibit-I is a copy of Petitioner's Presentence Report Employment history. At paragraph 58, it states as follows:

> **"From 1987 until his arrest in February 1995, Mr. Petersen was under contract with Jimmy Stevens Productions, Inc. of Santurce, Puerto Rico, where he earned $500 per performance as a Mocko Jumbi or Stilt Dancer."Id.**

**Exhibit-I.**

On the Island of Puerto Rico, there are available federal penal/correctional halfway house facilities where I can be placed for an additional six months beginning from July 30, 2008, under the new Second Chance Act of 2007, under the BOP's strict mathamatical calculation. However, after the Second Chance Act of 2007 was signed into law on April 9, 2008, it **REMOVED THE STRICT 10% DATE AND SIXTH MONTH DATE FOR PRERELEASE FOR PRISONERS AND INCREASED IT UP TO 12 MONTHS FROM THE PORTION OF THE FINAL MONTHS OF THAT TERM.** See: Attachment-1, and Petitioner's Declaration at Exhibits: B & G.

Evidence that case Manager Michael Rowe **DID NOT** consider or review Petitioner's case for possible additional placement in Puerto Rico due his employment there since 1987, is shown in Attachment-B, dated May 28, 2008, where he states:

> **"I will review your file for placement in Puerto Rico, if your case was not from that area, a relocation will have to be done. It is also possible to just transfer the CCC/RRC placement to Puerto Rico."Id.**

**See: Attachment B.**

The Presentence Report of Petitioner is within the authority and possession of case manager Michael Rowe. A review of Petitioner's employment history, and the location where he was employed is important for placement to a CCC/RRC program and should have been considered. Instead, the respondents' response to the first criteria did not consider Puerto Rico's halfway house as an additional earlier placement for Petitioner pre-release. Instead, the Respondents stated as follows:

### (1)
### THE RESOURCES OF THE FACILTY CONTEMPLATED

> "At this time, there is not a halfway house in the Virgin Islands. Thus, when Petitioner releases, he will be placed directly on home confinement under direct supervision of the U.S. Probation Department. The U.S. Probation Department in the Virgin Islands has a cap of 12 people, and they make the final determination regarding home confinement on all releases within their jurisdiction."

Under the second criteria for the nature and circumstances of the offense, the Respondents incorrectly alleged Petitioner was to serve a 21 month sentence for Conspiracy to Devise a Scheme or Artifice to Defraud by Mail Fraud, and Wire fraud. Moreover, Respondent incorrectly stated Petitioner has a good conduct time release date of March 19, 2008. However, the circumstances of the offense only involved Petitioner being convicted of conspiracy with one person [**Melvin Marvin Thomas**] who is acquitted on appeal of the offense in 1997. See: **United States v. Thomas, 114 F.3d 403 (3rd Cir. 1997)**. Thomas was the only person named on the indictment at trial, and the only person stand trial with Petitioner and was found guilty of conspiracy together with Petitioner. As such, Petitioner's conviction on conspiracy is lacking sufficient elements to stand, for he is innocent of the offense of conspiracy which requires two or more persons to conspire together. This case is still pending under litigation with the Third Circuit and the Supreme Court.

The date of **March 19, 2008,** which is stated as a good conduct time release

date for Petitioner, is in error only because of the year which should be **2009**, instead of **2008**. The date of **March 19, 2009**, is Petitioner's correct good conduct time release date, with the addition of 7-days he loss making it **March 26, 2009**.

On May 16, 2007, the Central Office of the Bureau of Prisons Administrator Harrell Watts stated that inmates will generally serve only 85% percent of their sentence less disallowances for infactions with discipline. In part, he stated:

> "The procedure outlined in Chapter 4 of Program Statement 5100.08, pertaining to "Months to Release" is not the procedure used to determine release dates. You apparently believe you should only serve in prison 85% of the sentence imposed. This section of Program Statement 5100.08 provides staff guidance on calculating the estimated number of months an inmate is expected to serve at the time of initial designation and pertains to security and classification issues, not the calculation of the release dates .. Excluding disallowances imposed by the Discipline Hearing Officer (DHO) for misconduct, the time an inmate generally will serve is 85% of the sentence imposed."Id.

See: Petitioner's 2241 Attachment A at Administrative Remedy 431611-A1.

Thus, 85% percent of the sentence imposed upon Petitioner (**188 months**) is **13 years and 3 months without rounding to the nearest whole number: (159.8 months)**. 13 years and 3 months beginning from December 7, 1995 (**date of imprisonment after he was found guilty at trial**) end at **March 7, 2009**. However, **March 7, 2009, plus 7-days loss of good conduct time, = March 14, 2009**, as Petitioner's correct good conduct 85% percent statutory release date.

The reference Program Statement 5880.28 is ambiguous to Congress' intent pursuant to 18 USC § 3624(b), and also with the Second Chance Act of 2007. Senator Joseph Biden stated:

> "I was the co-author of that bill. In the federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to prison for at least 85 percent of that time - 8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years."Id.

141 CONG. REC. S2349 (Feb. 9, 1996).

Senator Joseph Biden also stated:

> "So my Republican friends in a compromise we reached on the Senate floor back in November ... said no State can get any prison money unless they keep their people in jail for 85% percent of the time just like we do at the federal level in a law written by yours truly and several others."Id.

**140 CONG. REC. S13,350 (1994).**

Contrary to Senator Biden's expectation, the BOP rule never gives more than 1.28 years on a ten-year sentence. The BOP rule allows only 47 days credit for each year of the sentence imposed, requiring no less than 87.2 percent of the sentence to be served in prison. Although the 85% percent rule has been universally recognized by federal lawyers, Senators, probation officers and sentencing judges as the measure of good time, the rule is not honored by the Bureau of Prison. Federal prisoners are serving 87.2 percent of their sentences imposed with 47 days credit, while 54 days is craftily placed on the Sentence Monitoring Good Time Data Sheet. **See: Petitioner's 2241 Petition at Attachment C/Sentence Monitoring Computation Data.**

**\* This Court is reminded that Petitioner did not raise any CLAIM on the Good Conduct Time issue in this case, but only the Respondent, which is a totally different claim. Therefore this issue is not the subject of the 2241 petition.**

The Respondent in error, further states that based upon the nature and circumstances of the offense the charges alleged on mail fraud and wire fraud, **(which Petitioner is not convicted of)** Petitioner requires less RRC resources and monitoring. This is far from the truth. Petitioner requires more RRC resources and monitoring because he has lost everything and owes child support in the amount of $36,637.14, and has a 12 years old son and a 15 years old daughter he has to support upon his release. **See: Petitioner's Declaration at Exhibits C1 & C2.**

**(3)**
**HISTORY AND CHARACTERISTICS OF THE PRISONER**
---

The Respondent correctly states in this area that Petitioner was employed with the Fire Department in St. Thomas from 1989 to 1995. However, he has failed to indicate that Petitioner was also employed from 1987 until his arrest in February of 1995, on the Island of Puerto Rico. **See: Petitioner's Declaration at Exhibit-I.** Thus, he indicated wrongfully also that, Petitioner should not need more than 6 months because he is employable.

The Respondent did no research on the employment status in the Virgin Islands, and neither did they take into consideration Petitioner's debt to child support, and his two children which he will have to support once he is released. Moreover, they also did not consider that the Virgin Islands economy is only based strictly upon tourism unlike - living in the United States of America. Petitioner has lost home, apartment, private own vehicle, support from wife due to divorce, and owes child support, and will support his two children upon release. **These burdens should require that Petitioner need more than 6 months placement in a RRC/CCC home confinement, by an additional 3 to 5 months (not to exceed 12 months under the Second Chance Act of 2007) placement in a halfway house on the island of Puerto Rico, which has bed spaces sufficent to accomodate Petitioner.** There in Puerto Rico, Petitioner can obtain gainful employment to help support his family before he is placed in home confinement on January 30, 2009, according to this wrongful calculation of the the prerelease date by the BOP.

The Respondent furthermore claims that because Petitioner received $997 since August of 2007, inter alia, all of these factors indicate he has post incarceration resources, and **generally needs less RRC support and transitional services because he has more community and family support. THIS IS ALSO FAR FROM THE TRUTH,** for BOP has established its own criteria in oral

argument that inmates (prisoners) who have served longer sentences require longer placement in CCC/RRC:

> "... respondent explained at oral argument reflects the BOP's view that inmates serving longer sentences require longer prerelease programming."Id.

Martin, 430 F.Supp.2d at 86.

Moreover, this view is also contained within Program Statement 7310.04:

### CCC CRITERIA AND REFERRAL GUIDELINES

> "A number of factors must be weighed to determine the length of CCC Placement for inmates, **including their individual needs and existing community resources. ORDINARILY, INMATES WITH SHORTER SENTENCES DO NOT REQUIRE MAXIMUM CCC PLACEMENT DUE TO REDUCED TRANSITION NEEDS.**"Id.

**See: PS 7310.04 in Petitioner's Declaration at Exhibit-H.**

Thus, if BOP policy, and their view is that inmates serving longer sentences require longer prerelease programming, then naturally a longer prerelease programming should be applied in this case, since Petitioner has served more than 12-years in the Bureau of Prison and has lost everthing and owe child support, and must support his two children. 6 months placement will not be sufficient. Petitioner also objects to the remaining assessment made by the Respondent in this case, since the Second Chance Act of 2007, has afforded the BOP to provide prerelease to prisoners up to 12 months in RRC/CCC, and 6 months placement in home confinement. Based upon this fact, Petitioner is now eligible for prerelease placement beginning **July 30, 2008 (based upon BOP calculation of statutory release dated July 30, 2009)** and beginning immediately **(based upon Petitioner's 85% percent date of March-April 2009 as statutory release date)** since March-April 2008, has already past.

It must be understood that, the recommendation of time a inmate is to serve in a CCC/RRC program is not determined by the Probation Office, or any other agency. It's based upon the case manager in the BOP to make such recommendation time for placement as the Second Chance Act of 2007 points out.

11.

* "The maximum time allowed for pre-release RRC placement is increased to 12 months (from 6), and there is no longer a limit based on the percentage of term to be served. The The maximum time allowed for pre-release home confinement remains 6 months, or 10 percent of the term of imprisonment for that inmate, whichever is shorter.

* BOP staff will approach every inmate's assessment with the understanding that the inmate IS NOW ELIGIBLE for a maximum 12-month pre-release RRC placement.

* Staff will review inmates for pre-release RRC placements 17-19 months before their projected release dates.

* Inmates previously reviewed for pre-release RRC placement, but not yet transferred to an RRC, will be reconsidered using the new standards allowing a maximum 12-month placement.

* Written approval must be obtained from the Regional Director if staff determine that a period in excess of six months may be needed on an individual case.

* Pre-release RRC placement decisions must be made on an individual basis in every inmate's case according to new criteria identified in the Act, in addition to criteria in 18 U.S.C. § 3621(b), which include resources of the facility being considered, the nature and circumstances of the offense, and the history and characteristics of the inmate..."Id.

See: Petitioner's Declaration at Exhibit-B & G.


## CONCLUSION

WHEREFORE, based upon the evidence presented in this case, Petitioner is eligible for Pre-release RRC halfway house placement beginning July 30, 2008, & should be considered for it based upon the Second Chance Act of 2007, passed into law April 9, 2008. This is according to the BOP's statutory release date for Petitioner at July 30, 2009. However based upon Petitioner's correct 85% percent release date according to PS 5100.08 for redesignation, he should be considered for placement immediately since March-April 2008, have passed. The BOP rule 28 CFR §§ 570.20 - 570.21 is unlawful and invalid, and should not be used to restrict Petitioner to only six months after April 9, 2008. With

that said, and proven, this 2241 habeas corpus petition should be granted as district courts have done on this issue. Moreover, Petitioner's case was not reviewed by the Respondent(s) for 12 months placement using the new criteria identified in the Second Chance Act of 2007, but only with the criterias listed in 18 USC § 3621(b). Thus, for the foregoing reasons, the 2241 motion should be **granted.**

Respectfully submitted this /1st/ day of June 2008.

*/s/ Allan Petersen*
Mr. Allan A. Petersen 03533-094
Federal Prison Camp Montgomery,
Mobile G-Unit,
Maxwell Air Force Base,
Montgomery, Alabama 36112.
**Special mail Open Only In Inmate's Presence.**


## CERTIFICATE OF SERVICE

I, Allan A. Petersen, declare pursuant to Section 28 USC § 1746, I served the following listed parties below with this Reply with all attachments and exhibits in support of the relief requested on this /1st/ day of June 2008, by depositing prepaid envelopes into the U.S. Mail Boxes on the compound of FPC Montgomery, respectfully by my signature above.


**Interested Parties:**

R. Randolph Neeley
Assistant United States Attorney
Bar No.# 9083-E56R
Post Office Box 197,
Montgomery, Alabama 36101-0197

Middle District of Alabama
Office of the Clerk,
United States District Court,
Post Office Box 711,
Montgomery, Alabama 36101-0711.

13.



**ATTACHMENT-1**

PRWeb
PRESS RELEASE
NEWSWIRE

| Home | Learn More | Release Features | Success Stories | Contact Us | Search Archives | PRWeb Direct | Submit |

Industry Categories · News by Country · News by MSA · Todays News · Browse by Day · PR Trackbacks™ · Featured Videos

PRWeb, a leader in online news and press release distribution, has been used by more than 40,000 organizations of all sizes to increase improve their search engine rankings and drive traffic to their Web site.

All Press Releases for April 10, 2008 [YAHOO!]        Subscribe to this News Feed XML

## Breaking Federal Prison News: President Bush Signed Into Law 'The Second Chance Act of 2007' on April 9, 2008, Allowing the Federal Bureau of Prisons (BOP) to Consider Additional Release Benefits for Federal Prisoners

*Federal Prison Consultants, LLC summarizes "The Second Chance Act of 2007" into potential release benefits for federal prison and some state prison inmates and is available as advocates for federal and state prisoners, their families and criminal defense attorneys. The Second Chance Act primarily authorizes federal funding for state and federal reentry programs. It also directs -- but does not require -- the Bureau of Prisons (BOP) to consider giving federal prisoners longer stays in halfway houses, and authorizes funds for a very limited test program for elderly prisoners. The "second chance" the bill refers to applies almost exclusively to people leaving prison -- it does not give shorter sentences to people already in prison.*

(PRWEB) April 10, 2008 -- Federal Prison Consultants, LLC summarizes below "The Second Chance Act of 2007" into potential release benefits for federal prison and some state prison inmates and is available as advocates for federal and state prisoners, their families and criminal defense attorneys. With over 200 years of combined experience on staff, Federal Prison Consultants can assist with eligibility and advocate for the maximum release benefits available.

**The Second Chance Act of 2007**

The Second Chance Act primarily authorizes federal funding for state and federal reentry programs. It also directs -- but does not require -- the Bureau of Prisons (BOP) to consider giving federal prisoners longer stays in halfway houses, and authorizes funds for a very limited test program for elderly prisoners. The "second chance" the bill refers to applies almost exclusively to people leaving prison -- it does not give shorter sentences to people already in prison.

With few exceptions, the bill is designed to provide programs that help people leaving prison reenter their communities, so that they do not reoffend.

Only three parts of the bill may be able to affect how long a person stays in prison. These three parts only affect people in federal prison:

1. The first lengthens the outer limits of the time an individual is guaranteed consideration for prerelease community corrections (halfway house) from six months to 12 months. However, there is no new requirement that the BOP give every person the full 12 months in a halfway house at the end of their sentence.

2. The second creates a limited pilot program called the Elderly and Family Reunification for Certain Nonviolent Offenders provision. This provision will likely only take place in one facility and is unlikely to provide relief for many individuals.

**OPTIONS**

- Printer Friendly Version
- Download PDF Version
- Download Reader Version
- BlogThis
- ShareIt

**CONTACT INFORMATION**

Edward S. Bales -
Managing Director

Federal Prison Consultants, LLC

1-302-437-6926

Email us Here

**ATTACHED FILES**

There are no multimedia files attached to this release. If this is your release, you may add images or other multimedia files through your login.

**ABOUT PRESS RELEASES**

If you have any questions regarding information in these press releases please contact the company listed in the press release. Please do not contact PRWeb. We will be unable to assist you with your inquiry. PRWeb disclaims any content contained in these releases. Our complete disclaimer appears here.

3. Finally, the bill increases slightly the percentage of a federal sentence that can be served in home confinement. There is no requirement that the BOP give prisoners any time in home confinement.

The Second Chance Act authorizes funding for:

1. Existing demonstration and long-term adult and juvenile offender state and local reentry programs (does not apply to federal prisons), including:

- Existing adult and juvenile offender state and local reentry demonstration projects (includes educational, literacy, vocational and job placement services; a full continuum of substance abuse treatment services; and provision of comprehensive services upon reentry including mental and physical health care).
- New grants to states, tribal and local reentry courts for demonstration programs that would monitor juvenile and adult offenders reentering the community and provide them with coordinated and comprehensive reentry services and programs, including: coordinated and comprehensive reentry services and programs including drug and alcohol testing and health services and assessment; community impact panels and victim impact classes; and community services to juvenile and adult offenders, including housing assistance, education, job training and conflict intervention skills.
- Development, implementation or expansion of state, tribal or local demonstration drug treatment programs that are alternatives to imprisonment.
- Development, implementation or expansion of comprehensive and clinically appropriate family based demonstration substance abuse treatment programs as alternatives to incarceration for nonviolent parent drug offenders or prison-based family treatment programs for incarcerated parents of minor children.
- Improvements in education at state, tribal, and local prisons, jails and juvenile facilities.
- Technology career training demonstration programs.

2. Enhanced drug treatment and mentoring programs, including

- Continued and improved drug treatment programs at state, tribal and local prisons, jails or juvenile facilities. (Does not apply to federal prisons.)
- Nonprofit and tribal initiatives to provide mentoring and other transitional services. (Does not apply to federal prisons.)
- Nonprofit initiatives to provide mentoring, job training, and job placement services to eligible offenders (over the age of 18 and never convicted of a violent or a sex-related offense). (Applies to both federal and state prisons.)

3. Improved federal offender reentry (applies to federal prisons only), including:

- Demonstration programs that establish a federal prisoner reentry strategy.
- Assistance to prisoners with obtaining identification prior to release.
- A pilot program called "Elderly and Family Reunification for Certain Nonviolent Offenders." This program will probably take place at a single facility designated by the Attorney General and will allow eligible elderly offenders who have served ten years or more of a long sentence to serve out the remainder of their terms in

- home detention.
- A demonstration program to supervise high risk individuals in community corrections facilities and home confinement.

4. Reentry research

- Funding for research on juvenile and adult offender reentry, post-incarceration supervision violations and revocations, the needs of incarcerated parents, and the effectiveness of depot naltrexone for heroin addiction.

5. Community corrections (applies to federal prisons only)

- The Bureau of Prisons (BOP) shall ensure that a prisoner serving a term of imprisonments spends a portion of the final months of that term (not to exceed 12 months) in a community correctional facility or appropriate conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for the reentry of that prisoner to the community. The BOP may place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment or six months.

For more information or to get help with these new programs, please contact Ed Bales, Managing Director of Federal Prison Consultants, LLC at Toll-Free 1-888-5-PRISON. Federal Prison Consultants, LLC is a full-service Federal & State Advocacy Firm with over 200 years of combined experience on staff.

http://www.FederalPrisonConsultants.com

###

Post Comment:
Trackback URL:
http://www.prweb.com/pingpr.php/WmV0YS1FbXB0LUNvdXAtUHJvZi1TdW1tLVplcm8=

 Technorati

federal prison federal prisons federal bureau of prison federal bureau of prisons bureau of prison bureau of prisons federal prison bureau federal prisoner federal prisoners federal prison inmate federal prison inmates

Bookmark - Del.icio.us | Digg | Furl It | Spurl | RawSugar | Simpy | Shadows | Blink It | My Web



**Disclaimer:** If you have any questions regarding information in these press releases please contact the company listed in the press release. Please do not contact PRWeb®. We will be unable to assist you with your inquiry.
PRWeb® disclaims any content contained in these releases. Our complete disclaimer appears here.

© Copyright 1997-2008, Vocus PRW Holdings, LLC.
Vocus, PRWeb and Publicity Wire are trademarks or registered trademarks of Vocus, Inc. or Vocus PRW Holdings, LLC.

Terms of Service | Privacy Policy | Copyright

BP-S148.055  **INMATE REQUEST TO STAFF** CDFRM    A T T A C H M E N T - 2
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) **Case Manager Michael Rowe** | DATE: **May 23, 2008.** |
|---|---|
| FROM: **Allan Petersen** | REGISTER NO.: **03533-094** |
| WORK ASSIGNMENT: **Education Department Detail** | UNIT: **Mobile Gulf** |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

**Good day Case Manager Rowe: I was employed on the Island of Puerto Rico from 1987 until my arrest in 1995. Please check my Presentence Report. I would like to participate in a CCC/RRC program on the Island of Puerto Rico for at least 90 to 180 days, before I am released for 6 months placement on home confinement. At the time I worked in Puerto Rico, my release residence remained in St. Thomas Virgin Islands which is just 30 minutes away by plane. I understand that six months (180 days) is the maximum placement for home confinement and also for CCC/RRC halfway house placement, which is a penal correctional institution pursuant to 18 USC § 3621(b). I thank you for your assistance.**

(Do not write below this line)

DISPOSITION:

I will review your file for placement in Puerto Rico, if your case was not from that area, a relocation will have to be done. It is also possible to just transfer the CCC/RRC placement to Puerto Rico.

Signature Staff Member                         Date  5-28-08

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                              and BP-S148.070 APR 94



Allan Petersen 03533-094
Federal Prison Camp Montgomery,
Maxwell Air Force Base,
Mobile, G-Unit Wing,
Montgomery, Alabama 36112.
Special Mail, Open only in presence of inmate.



Office of the Clerk,
Middle District of Alabama
United States Distriet Court,
Post Office Box 711,
Montgomery, Alabama 36101-0711.