IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 AUG 13  A 9:55

ALLAN PETERSEN              Civ. No.# 2:08cv040WKW
    Petitioner

vs.

DARLENE DREW, WARDEN
F.P.C. MONTGOMERY,
    Respondent.
-----------------------

### MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFF'S RESPONSE WITH NEW RELEVANT CIRCUIT COURT RULING ON THE BOP'S CALCULATION OF GOOD TIME CREDIT AND THE WARDEN'S RESPONSE.

Petitioner Allan A. Petersen, now moves this Honorable Court with additional new facts relevant to this case which is in good faith, and requests the court the granting of this motion and the facts for a complete evaluation of the case.

### NEW EVIDENCE

(1): The Ninth Circuit Court of Appeals on July 3, 2008, held that, "The Federal Bureau of Prisons regulation governing the calculation of inmate's good-time credits was issued in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). See: CLR Vol. 83, No.16 page 651, attached.

(2): Most recently, the New Warden at the issued his written opinion to Petitioner indicating that only 6 months would be sufficient, which is, the requirement of the old

1.

BOP Policy which has been ruled invalid by several courts. As such, abuse of discretion under the Second Chance Act of 2007, has taken effect with the BOP since they have failed to afford inmates with long sentences over 12 and 13 years to receive more than six months placement in RRC or home confinement. **See: Warden's Letter attached.**

### CONCLUSION

**WHEREFORE,** Petitioner prays the court grant this motion, and understand that the BOP has issued no new program statement or policies on the Second Chance Act of 2007, and remains in force with their old policy of up to six months.

Respectfully submitted this 10 day of August 2008.

*/s/ Allan Petersen*
Allan Petersen 03533-094
Federal Prison Camp Montgomery
Maxwell Air Force Base
Montgomery, Alabama 36112

### CERTIFICATE OF SERVICE

I, Allan A. Petersen CERTIFY under the penalty of perjury that I mailed a exact copy of this motion to the parties below listed by placing same into the US Postal Service mail box on the compound of FPC Montgomery respectfully on this 10 day of August 2008.

*/s/ Allan Petersen*
Allan Petersen 03533-094

Interested Parties:
--------------------

R. Randolp Neely
AUSA Bar No.# 9083-E56R
P.O.Box 197,
Montgomery, Al. 36101-0197

Clerk
Middle District of Alabama
Office of the Clerk
U.S. District Court
P.O.Box 711
Montgomery, Al. 36101.

2.

ter the first knock. It took from 20 to 30 seconds to force the door open.

The plaintiffs sued the police under 42 U.S.C. § 1983 alleging that the brevity of the officers' pause between knocking and forcing entry rendered their execution of the warrant unreasonable. The district court instructed the jury to "determine whether execution of the search warrant was reasonable given the totality of the circumstances." The jury found for the defendants. On appeal, the plaintiffs argued that, because the case required a balancing of the competing and complex issues of privacy and law enforcement, only the judge could determine whether the police conduct was reasonable.

In a per curiam opinion, the Ninth Circuit rejected the plaintiffs' argument, saying, "[W]e frequently entrust juries with the task of determining the reasonableness of police conduct." For instance, it noted, in excessive-force lawsuits, a jury is usually tasked with deciding whether the force used by officers was reasonable. "If a jury is capable of weighing the reasonableness of a use of force, then it is also capable of weighing the reasonableness of an entry into a building," the court reasoned. Moreover, it said, jurors in civil rights actions may decide whether police had probable cause to search, and "[i]f the jury can weigh probable cause, a tricky and legalistic doctrine if ever there was one, then it can also decide whether a warrant was lawfully executed."

### Habeas Corpus—Second or Successive Petitions—Government's Failure to Timely Disclose Information

Although it is "troubling" that prosecutors' failure to timely disclose to a habeas corpus petitioner problems with a prosecution witness put the petitioner in the position of having to file a second petition for relief, the unfairness of her situation did not excuse her from having to comply with the strict gatekeeping requirements the Antiterrorism and Effective Death Penalty Act imposes on second or successive petitions, the U.S. Court of Appeals for the Ninth Circuit held July 16. (*United States v. Lopez*, 9th Cir., No. 07-35389, 7/16/08)

The petitioner did not know until after her first habeas petition was denied that, at the time of her trial, an informer who testified for the prosecution had already been deemed unreliable by authorities and was no longer being used in investigations. That same informer testified against other defendants, and defense counsel in one of those cases learned of the existence of a government memorandum outlining the difficulties with the informer. That counsel passed the information along to the petitioner's counsel. Once the petitioner discovered that information, she sought relief anew, arguing that the government withheld material exculpatory information at her trial in violation of the due process rule of *Brady v. Maryland*, 373 U.S. 83 (1963). She argued that she should not be subject to the rigorous rules governing second or successive petitions because it was the government's fault she did not know about the basis for her claim earlier.

In an opinion by Judge Raymond C. Fisher, the Ninth Circuit held that the petitioner was not exempt from AEDPA's gatekeeping requirements. It noted the absence of evidence that prosecutors deliberately put her in an unfavorable position, and it suggested that its decision would have been different had that been the case.

Because the petition was successive and was not predicated on a retroactive new rule of law, the petitioner could obtain relief only if her claim involved newly discovered evidence that, if proved and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found her guilty.

The court determined that she could not meet that high standard because, if allowed to go forward, she would not be able to meet the lesser burden required to succeed on her *Brady* claim given the low value of the informer's testimony against her and the other inculpatory evidence presented at her trial. It also concluded that the government's conduct was not "so grossly shocking and so outrageous as to violate the universal sense of justice," which, under circuit law, would entitle her to vacatur of her conviction.

### Prisons and Jails—Calculation of Good-Time Credit—Administrative Procedures Act

A federal Bureau of Prisons regulation governing the calculation of inmates' good-time credits was issued in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), the U.S. Court of Appeals for the Ninth Circuit held July 3. However, the court also decided that prisoners affected by the regulation are not entitled to habeas corpus relief. (*Tablada v. Thomas*, 9th Cir., No. 07-35538, 7/3/08)

The regulation, 28 C.F.R. § 523.20, became final in 2005 and interprets 18 U.S.C. § 3624(b), which governs the calculation of good-conduct time for federal prisoners. The regulation interprets the statute to calculate good-time credits on the basis of time served, as opposed to the sentence imposed. The BOP has held that interpretation since 1992 and the court has upheld it against reasonableness challenges. For example, in *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 70 CrL 240 (9th Cir. 2001), the court concluded that the language in the statute requiring the BOP to evaluate a prisoner's conduct retrospectively makes reasonable the agency's "time served" interpretation of "term of imprisonment." However, the recent case presented a new challenge, one that rested on the BOP's failure to articulate any reason for the new regulation.

In *Arrington v. Daniels*, 516 F.3d 1106, 82 CrL 587 (9th Cir. 2008), the court found that a BOP regulation that categorically excluded prisoners with convictions involving a firearm or other dangerous weapon or explosives from eligibility for early release under Section 3621(e) violated the APA because the administrative record contained no rationale for the categorical exclusion. In light of that ruling, the BOP conceded in this case that it violated the APA when it failed to articulate a rational basis for its decision to promulgate the regulation.

Denying relief in an opinion by Judge Philip S. Gutierrez, the court focused on the long-standing nature of the interpretation that underlies the regulation. That interpretation survives the removal of the invalid regulation, it said.

The court concluded that the prisoner who filed the action is not entitled to relief because the BOP's methodology for calculating good time credits is both reasonable and persuasive under the limited deference provided by *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). It added that there as been a consistent and even application of that methodology since 1992. To change course now, it said, "would have an extremely

disruptive effect on the BOP's administration of the release of federal prisoners."

### Right to Counsel—Late Invocation of Right to Self-Representation—Habeas Corpus

A trial court's dismissive treatment of a defendant's request to proceed pro se, four days into his five-day trial, warrants a grant of federal habeas corpus relief from his state conviction, the U.S. Court of Appeals for the Sixth Circuit held July 15. (*Moore v. Haviland*, 6th Cir., No. 07-3380, 7/15/08)

In the middle of the state's case, the habeas petitioner informed the trial court that his attorney was not asking the witnesses questions that the petitioner considered to be essential to his defense. At the trial court's invitation, the petitioner followed up this and other complaints with a written motion in which he made four alternative requests that were designed to get his questions asked of the witnesses. The final alternative was a request to proceed pro se with a 48-hour continuance of the trial. The trial court briefly addressed the motion during a sidebar, concluded that the defendant's requests were unclear, and proceeded with the rest of the trial.

In an opinion by Judge Milton I. Shadur, sitting by designation, the Sixth Circuit found that the motion was not equivocal or unclear. It decided that, in light of the trial judge's refusal to grant any of the petitioner's first three alternatives, the trial court "was duty bound to treat the letter as a clear request to proceed pro se, written by the accused after the court had cautioned him against the soundness of that decision." This clear request, the court said, "was no less voluntary because it was contingent on the denial of other options that he might also find palatable," the court said. The trial court's failure to attend to the petitioner's request to proceed pro se constituted, in the words of the federal habeas statute, "an unreasonable application" of the Sixth Amendment right to self-representation as "clearly established" in *Faretta v. California*, 422 U.S. 806 (1975), the circuit court decided. It acknowledged that *Faretta* gives a trial judge discretion to consider the timeliness of a self-representation request, but it concluded that the trial court in this case did not exercise that discretion at all.

A state appellate court had upheld the conviction, relying on *McKaskle v. Wiggins*, 465 U.S. 168 (1984), which stated that "*Faretta* does not require a trial judge to permit 'hybrid' representation." *McKaskle* is not "on point," the Sixth Circuit said, because the petitioner here complained that he was denied his right of self-representation, not that his attorney overstepped the bounds of standby counsel. "For the state appellate court to read *McKaskle* to find a waiver of Moore's right to self-representation was an objectively unreasonable application of that decision," the circuit court said.

Moreover, in light of the trial court's prior admonitions to the petitioner about interrupting the proceedings, the Sixth Circuit decided that the petitioner could not reasonably have been expected to interrupt the proceedings to ask the trial court to rule on his motion.

Dissenting, Judge John M. Rogers argued, among other things, that denying such a late request to proceed pro se is not an unreasonable application of *Faretta*.

### Search and Seizure—Garbage Left Out for Collection—State Constitutional Law—Retroactivity of Restrictions

The Indiana Supreme Court decided June 27 that the rule it established in *Litchfield v. State*, 824 N.E.2d 356, 77 CrL 9 (Ind. 2005), imposing certain restrictions on warrantless garbage searches, does not apply retroactively to cases in which such searches took place prior to the court's ruling. (*Membres v. State*, Ind., No. 49S02-0701-CR-33, 6/27/08)

*Litchfield* held that a warrantless search of garbage that has been left out for collection is permissible under the Indiana Constitution only if the police reasonably suspect that it contains evidence of a crime. This interpretation of the state privacy guarantee provides the contents of garbage greater protection than does the Fourth Amendment as interpreted in *California v. Greenwood*, 486 U.S. 35 (1988).

The defendant in this case argued that he was entitled to suppression of evidence obtained by way of a search of his trash that did not meet the *Litchfield* standard. *Litchfield* was handed down two weeks after the search of his garbage.

In determining whether to apply new rules of state criminal procedure retroactively, the Indiana high court differentiates between new principles that go to the fairness of the trial itself and are designed to eliminate a previously existing danger of convicting the innocent, which must be given retroactive effect, and those that enforce other constitutional rights not necessarily connected with the factfinding function, which need not be.

In an opinion by Justice Theodore R. Boehm, the court said that, because the exclusionary rule prohibits introduction into evidence of unlawfully seized material, it is an obstacle to the truth-finding objective of trials and an example of a rule that does not go to the fairness of the trial. Therefore, it held, *Litchfield* established a new rule of state criminal procedure that does not affect the reliability of the factfinding process. As such, it does not apply retroactively to the defendant.

Justice Frank Sullivan Jr., dissenting, accused the majority of creating an exception for trash dives to the court's long-standing rule that new rules of criminal procedure apply to future trials and cases that are not yet final so long as the issue was properly preserved in the trial court.

Justice Robert D. Rucker, also dissenting, agreed with the result in the case but added that the majority's refusal to apply *Litchfield* retroactively violates the court's established rules and creates unjustified exceptions for cases involving the exclusionary rule.

### Search and Seizure—Probable Cause—Nexus With Place to Be Searched

Information that a defendant rented a house from a man suspected of committing a murder, that he was present at the man's own home when the murder occurred, and that the man later asked an informer to hide the victim's car at the informer's house was enough, with a few other facts, to support a reasonable inference of a connection between the murder and the defendant's house, the U.S. Court of Appeals for the Eighth Circuit held July 8. (*United States v. Perry*, 8th Cir., No. 07-3097, 7/8/08)

Eight months after the homicide, a sheriff's deputy obtained a search warrant for the defendant's house on

U.S. Department of Justice  
Federal Bureau of Prisons

RESPONSE TO INMATE REQUEST

007-30L

| From: | Petersen, Allan A. | 03533-094 | Montgomery G | FPC Montgomery |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**RESPONSE/DISPOSITION**

This is in response to your correspondence dated June 16, 2008, addressed to the Regional Director, Southeast Regional Office. Your request has been forwarded to this office for response, as it was determined we could more readily address your concerns. You are requesting eight to ten months Residential Reentry Center (RRC) placement in accordance with the provisions of the Second Chance Act.

A review of this matter reveals your RRC placement request has been reviewed by your unit team in accordance with the Second Chance Act provisions. Based upon that review, it has been determined that a six-month RRC placement is sufficient to meet your release needs. You have a residence and a supportive family. According to your Pre-Sentence Investigation Report, you were gainfully employed until your incarceration. Prior employment included positions with the Virgin Islands Fire Department, several local hotels, and several cruise ships.

Based upon the above information, I concur with the unit team's assessment that a six-month RRC placement will provide ample opportunity to assist you in establishing employment and making a successful transition back into the community.

I trust this information is responsive to your concerns.

7/15/08  
DATE

[signature]  
SIGNATURE

```
Allan Peterson 03533-004
Federal Prison Camp Montgomery
Maxwell Air Force Base
Montgomery, Alabama 36112
```

MONTGOMERY AL 361

12 AUG 2008 PM 3 T



```
Office of the Clerk
Middle District of Alabama
U.S. District Court
P.O. Box 711
Montgomery, Alabama 36101.
```

36101+0711